317 Md. 380 (1989)
564 A.2d 399
RUTH M. ANDRESEN
v.
RALPH E. ANDRESEN.
No. 111, September Term, 1987.
Court of Appeals of Maryland.
October 10, 1989.
Melvin G. Bergman, Lanham (Ronald S. Goldberg, Gaithersburg, both on brief), for appellant.
Charles Sures (Sures, Dondero & McCarron, on brief), Silver Spring, for appellee.
Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.
COLE, Judge.
Ruth Andresen seeks to share in her husband Ralph's military retirement pay. She was denied this relief when the trial court dismissed her motion to modify a decree of divorce.
Ruth and Ralph were divorced in Maryland on November 13, 1981, after some forty years of marriage. The decree of divorce incorporated a handwritten settlement agreement between the parties which provided the following: Ralph would pay Ruth $500 in alimony per month for five years, Ralph would contribute $425 toward Ruth's attorney's fee, and the parties would divide the cost of the divorce action. Neither the settlement agreement nor the divorce decree contained any provisions relating to Ralph's military pension.
On June 26, 1981, the United States Supreme Court ruled that, as a matter of federal law, courts could not subject military retirement pay to division upon divorce. McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). We applied this ruling in Hill v. Hill, 291 Md. 615, 621, 436 A.2d 67, 70 (1981). On the other hand, in Deering v. Deering, 292 Md. 115, 437 A.2d 883 (1981), we held that, as a matter of Maryland law, all pensions and retirement benefits accruing during the marriage were marital property. In the Deering opinion, 292 Md. at 117 n. 2, 437 A.2d at 884-885 n. 2, we specifically noted that military pensions were controlled by federal law, citing the Supreme Court decision in McCarty v. McCarty, supra and our own decision in Hill v. Hill, supra.
Thus, at the time the Andresens divorced, had the trial court been asked to consider the status of Ralph's military pension, both the Hill and McCarty decisions would have mandated awarding the pension entirely to Ralph under the controlling federal law.
Shortly after the Andresens' divorce became final, changes in federal statutory law permitted courts to consider military pensions as marital assets for distribution in divorce proceedings. About four years later, on March 12, 1986, Ruth, based solely on these changes in the law, filed in the Circuit Court for Montgomery County a motion to modify the 1981 divorce decree to allow her to share in Ralph's pension proceeds. Ruth's motion failed to specify what procedural mechanism, if any, authorized the court to disturb the finality of the more than four-year-old divorce decree.
Ralph moved to dismiss and after hearing argument Judge William M. Cave granted Ralph's motion. Ruth appealed this result to the Court of Special Appeals, but we granted certiorari prior to argument in the intermediate appellate court to consider whether the motion to dismiss was properly granted.
We shall set forth the changes in the law which Ruth asserts constitute sufficient justification to reopen the final divorce decree to allow her to share in Ralph's military pension benefits. As alluded to earlier in this opinion, in McCarty, the Supreme Court held that military retirement benefits could not be distributed as community or marital property in state court divorce proceedings. In response to the McCarty decision, Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA) on September 8, 1982, codified in pertinent part at 10 U.S.C. § 1408(c)(1), effective February 1, 1983. The USFSPA provides:
Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a [service] member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.
The purpose of this act was underscored by the Senate Report which stated:
The purpose of this [Act] is to place the courts in the same position they were in on June 26, 1981, the date of the McCarty decision, with respect to treatment of nondisability military retired or retainer pay. The [Act] is intended to remove the federal preemption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent state or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this [Act] requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution.
Senate Report No. 97-502, July 22, 1982, reprinted in 1982 U.S.Code Cong. & Admin.News, 1555, 1596, 1611.
In essence, pursuant to the USFSPA, Maryland law was to determine whether military pensions were marital property. And, under Maryland law, as construed in Deering v. Deering, supra, pensions generally, including military pensions, are marital property. Moreover, this was confirmed by the General Assembly which, in Ch. 159 of the Acts of 1983, § 2, now codified as Maryland Code (1984), § 8-203(b) of the Family Law Article, stated that "[i]n this subtitle, a military pension shall be considered in the same manner as any other pension or retirement benefit."
Not only did Congress in the USFSPA intend to overrule the Supreme Court's McCarty decision and provide that state law should determine whether military pensions are marital property, but the legislative history reveals that Congress intended that the USFSPA be retroactive.[1] Moreover, the legislative history indicates that Congress contemplated that divorce decrees, entered between the date of the McCarty decision and the effective date of the USFSPA, might be reopened. The previously quoted report of the Senate Committee on Armed Services stated (Senate Report No. 97-502, supra, 1599-1600):
"Former spouses divorced in the interim period between the McCarty decision and the effective date of this law will have an opportunity to return to court to have their decrees modified in light of this legislation."
And later, the report explains (id. at 1611):
This power is returned to the courts retroactive to June 26, 1981. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision.
The congressional contemplation concerning the reopening of decrees comports with Rule 60(b) of the Federal Rules of Civil Procedure.[2] Specifically, Rule 60(b) contains two subsections which allow a court great latitude to permit post-final judgment relief. First, in subsection (b)(5) a court may relieve a party from a final judgment if "it is no longer equitable that the judgment should have prospective application." This provision allows a court to employ its equity power to determine that a judgment should be vacated. Second, the rule provides in subsection (b)(6) that a court may relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." Obviously this broad language vests a court with wide discretion. Some thirty five (35) states have adopted language substantially the same as in FRCP 60(b)(5) and/or 60(b)(6).[3] Eight states have reserved equity or other broad powers to revise a final judgment.[4] The remaining group of states, into which we believe Maryland properly fits, limits the right of the court to revise or vacate the judgment to the specific grounds set forth in the applicable statute or rule.[5]
Consequently, unlike the law in the great majority of states, Maryland law contains no procedural mechanism which would allow a Maryland court to reopen a divorce decree finalized for more than four years. There is no authority under Maryland law which permits a court to redetermine marital property more than 30 days after the decree becomes enrolled except under specific circumstances. Subsection (b) and (d) of Maryland Rule 2-535 authorize a judgment to be revised only in case of fraud, mistake, irregularity or clerical errors.[6] Moreover, our cases have rigorously emphasized the finality of judgments. See generally Penn Cent. Co. v. Buffalo Spring & Equipment Co., 260 Md. 576, 273 A.2d 97 (1971) (emphasizing the desirability that there be an end to litigation).
For example, in Platt v. Platt, 302 Md. 9, 485 A.2d 250 (1984), we considered a husband's petition to amend a five-year-old enrolled divorce decree. Chief Judge Murphy, writing for the Court, held that the trial court lacked power to revise the decree. In so doing, he succinctly summarized the controlling principles:
The law governing the power and control of a circuit court over an enrolled decree is firmly established. In the context of this case in which "newly discovered evidence" is not a concern, it is spelled out by rule  former Maryland Rules 625a and 681; by statute  Maryland Code (1974, 1984 Repl.Vol.) § 6-408 of the Courts and Judicial Proceedings Article; and by judicial decision  e.g. Maryland Lumber v. Savoy Constr. Co., 286 Md. 98, 405 A.2d 741 (1979); Hughes v. Beltway Homes, Inc., 276 Md. 382, 347 A.2d 837 (1975). Read together, the rules, the statute and our decisions boil down to a dictate that for a period of thirty days from the entry of a law or equity judgment a circuit court shall have "unrestricted discretion" to revise it. Maryland Lumber, 286 Md. at 102, 405 A.2d 741. Thereafter, a circuit court has revisory power and control over a judgment only in case of fraud, mistake, irregularity or clerical error, provided that the person seeking the revision acts with ordinary diligence and in good faith upon a meritorious cause of action or defense. This dictate "embraces all the power the courts of this State have to revise and control enrolled judgments and decrees." Eliason v. Comm'r of Personnel, 230 Md. 56, 59, 185 A.2d 390 (1962). See also Meyer v. Gyro Transp. Systems, 263 Md. 518, 527, 283 A.2d 608 (1971). We have narrowly defined and strictly applied the terms fraud, mistake, irregularity, and clerical error, and have set out what constitutes ordinary diligence. See Hughes, supra, 276 Md. at 386-89, 347 A.2d 837, and cases therein cited; Weitz v. MacKenzie, 273 Md. 628, 631, 331 A.2d 291 (1975).
Id. at 13, 485 A.2d at 252.
In the present case, there is neither an allegation, nor the factual basis for an allegation, that fraud, mistake, irregularity, or clerical error justify reopening the divorce decree.
We are aware that many state courts have reopened finalized divorce decrees to allow the former spouse to share in military pension benefits pursuant to the USFSPA. The cases, however, are in those jurisdictions having provisions like Federal Rule 60(b)(5) and (6) or in jurisdictions where the law provides broad powers to reopen final judgments.
For example, in Smith v. Smith, 458 A.2d 711 (Del. Fam. Ct. 1983) the Delaware court sustained a wife's motion to reopen an 18-month-old divorce decree to consider, in light of the USFSPA, the award to the husband of his military pension as mandated by McCarty. Key to the Smith court's decision was a Delaware procedural rule permitting relief from a final judgment where "it is no longer equitable that the judgment have prospective application; or ... any other reason justifying relief from the operation of the judgment." Id. at 713. To the same effect is Flannagan v. Flannagan, 42 Wash. App. 214, 222, 709 P.2d 1247, 1252 (1985), rev. denied, 105 Wash.2d 1005 (1986) (applying a similar procedural rule to reopen a McCarty era decree). See In re Marriage of Waters, 223 Mont. 183, 724 P.2d 726 (1986); Castiglioni v. Castiglioni, 192 N.J. Super. 594, 471 A.2d 809 (1984); Koppenhaver v. Koppenhaver, 101 N.M. 105, 678 P.2d 1180 (N.M.Ct.App.), cert. denied, 101 N.M. 11, 677 P.2d 624 (1984). See also Thorpe v. Thorpe, 123 Wis.2d 424, 367 N.W.2d 233 (Wis.App. 1985).
In jurisdictions where the law concerning the reopening of final judgments is similar to Maryland law, however, courts have held that divorce decrees, which became final during the McCarty era, cannot be reopened. In Allison v. Allison, 690 S.W.2d 340, 344 (Tex. App. 1985) (no writ of error, 700 S.W.2d 914), the Texas Court of Appeals stated:
The law of the courts of this state does not have an equivalent of Federal Rule 60 and does not recognize the authority of a trial court to relitigate issues as a general principle.
In In re Marriage of Quintard, 691 S.W.2d 950, 953 (Mo. App. 1985), the Missouri intermediate court expressed a similar view.
On the other hand, unlike Delaware and New Jersey, the Missouri Rules of Civil Procedure do not contain a comparable provision. Indeed, rather than providing a procedural mechanism by which a marital dissolution decree might be reexamined, Missouri law rigorously stresses the finality thereof.
See also In re Marriage of Habermehl, 135 Ill. App.3d 105, 89 Ill. Dec. 939, 481 N.E.2d 782 (1985).
There seems to be little doubt that Congress intended the USFSPA to be retroactive. If this case had arisen earlier, if the divorce decree had still been interlocutory, and if all of the requirements of the USFSPA had been met,[7] we would of course give effect to that congressional intent and direct that the circuit court consider the military pension in making its marital property determinations and in arriving at a monetary award. We do not believe, however, that the congressional intent went so far as to override state law concerning the reopening of final judgments. As previously discussed, the legislative history of the USFSPA discloses a congressional contemplation that final judgments could be reopened. In our view, this merely reflected Congress's awareness that the law in the vast majority of states, like the Federal Rules of Civil Procedure, would permit a reopening of final judgments to accomplish the purposes of the USFSPA. On the other hand, there is nothing in the legislative history demonstrating that Congress intended to preempt state procedural law setting forth the grounds for reopening a final judgment.
Under Maryland law, Ruth Andresen has established no grounds upon which the trial court's final judgment may be reexamined. Consequently, we affirm the trial judge's dismissal of Ruth's motion to modify.
JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. PETITIONER TO PAY THE COSTS.
NOTES
[1] Mrs. Andresen argues at length in her brief that the General Assembly intended that Ch. 159 of the Acts of 1983 be retroactive. In our view, this is a non-issue. As previously explained, Ch. 159 did not effect a change in Maryland marital property law, and thus no question of prospectivity or retroactivity of Maryland law is presented. It was federal law concerning the treatment of pensions, not Maryland law, which was changed.
[2] Federal Rule of Civil Procedure 60(b) provides as follows:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void, (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.
[3] Those states adopting the 60(b)(5) provision only are: Florida, Fla.Rule of Civil Procedure 1.540; Missouri, Mo.Rule of Civil Procedure 74.06; Nevada, Nevada Court Rule 60; Oregon, Or. Rule of Civil Procedure 71 B; South Carolina, S.Car.Rule of Civil Procedure 60(b).

The following states have adopted substantial equivalents of both FRCP 60(b)(5) and 60(b)(6): Alabama, Rule of Alabama Supreme Court 60(b)(5) and (6); Alaska, Alaska Civil Rule 60(b)(5) and (6); Arizona, Arizona Rule of Civil Procedure 60(c)(5) and (6); Colorado, Colo. Rule of Civil Procedure 60(b)(4) and (5); Delaware, Delaware Superior Court Civil Rule 60(b)(5) and (6); Hawaii, Hawaii Rule of Civil Procedure 60(b)(5) and (6); Idaho, Idaho Rule of Civil Procedure 60(b)(5) and (6); Indiana, Indiana Rule of Procedure Trial Rule 60(b)(7) and (8); Kansas, Kan.Civ. Proc.Code Ann. § 60-260(b)(5) and (6) (Vernon 1983); Kentucky, Kentucky Rule of Civil Procedure CR 60.02(e) and (f); Maine, Maine Rule of Civil Procedure 60(b)(5) and (6); Massachusetts, Mass. Rule of Civil Procedure 60(b)(5) and (6); Michigan, Mich. Court Rule 2.612(C)(1)(e) and (f); Minnesota, Minn. Rule of Civil Procedure 60.02(e) and (f); Mississippi, See Stringfellow v. Stringfellow, 451 So.2d 219 (Miss. 1984); Montana, Mont. Rule of Civil Procedure 60(b)(5) and (6); New Jersey, N.J.Civil Practice Rule 4:50-1(e) and (f); New Mexico, Rule of Civil Procedure for the District Courts 1-060(B)(5) and (6); North Carolina, N.C.Rule of Civil Procedure 60(b)(5) and (6); North Dakota, N.D.Rule of Civil Procedure 60(b)(v) and (iv); Ohio, Ohio Rule of Civil Procedure 60(B)(4) and (5); Rhode Island, Super.R.Civ.P. 60(b)(5) and (6); South Dakota, S.D.Rule of Procedure 15-6-60(b)(5) and (6); Tennessee, Tenn.Court Rules Ann., Rule 60.02(4) and (5); Utah, Utah Rule of Civil Procedure 60(b)(6) and (7); Vermont, Vermont Rule of Civil Procedure 60(b)(5) and (6); Washington, See Flannagan v. Flannagan, 42 Wash. App. 214, 222, 709 P.2d 1247, 1252 (1985), rev. denied, 105 Wash.2d 1005 (1986); West Virginia, W. Va.Rule of Civil Proc. 60(b)(5) and (6); Wisconsin, Wisc.Rule of Civil Procedure 806.07(1)(g) and (h); Wyoming, Wy.Rule of Civil Procedure 60(b)(5) and (6).
[4] These states are: Connecticut, Conn. Gen. Stat. Ann. § 52-212a (West 1989 Supp.); Georgia, Georgia Civil Practice Act 9-11-60(h); Illinois, Ill. Ann. Stat. ch. 110, § 2-1401 (Smith-Hurd 1983); New Hampshire, District and Municipal Court Rule 3.21(A); New York, N.Y.Civil Practice Rule 5015; Pennsylvania, Rule of Civil Procedure 227.1; Texas, Tx.Rule of Civil Procedure 329b(d); and Virginia, Va.Code § 8.01-428 (1984). Inherent equity powers have been reserved by these states using language substantially different from FRCP 60(b).

Although some of these states enumerate possible grounds for vacating judgments, discretion is reserved, either expressly or by court interpretation, to achieve this objective. New York and Virginia deserve special notice, as they reserve their court's inherent equity powers to vacate or modify any judgments in the interest of substantial justice.
[5] The states in this group are: Arkansas, Ark.Rule of Civil Procedure 60; California, Cal.Civ.Proc.Code § 473 (Deering 1989 Supp.); Iowa, Iowa Rule of Civil Procedure 252; Louisiana, La. Code Civ. Proc. Ann. Art. 1951 (West 1951); Maryland, M.R. 2-535; Nebraska, Neb. Rev. Stat. § 25-2001 (1988); Oklahoma, Okla. Stat. Ann. tit. 12, § 1031 (West 1985). All of these states enumerate specific grounds necessary to vacate or modify judgments and limit the timing during which these grounds may be raised. No reservations of equity powers to vacate judgments are provided.
[6] Rule 2-535. REVISORY POWER

(b) Fraud, Mistake, Irregularity.  On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.
(d) Clerical Mistakes.  Clerical mistakes in judgments, orders, or other parts of the record may be corrected by the court at any time on its own initiative, or on motion of any party after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed by the appellate court, and thereafter with leave of the appellate court.
[7] The respondent Ralph Andresen makes an alternate argument that the requirements of the USFSPA had not been met in this case. In light of our decision in the case, we do not reach this alternate argument.