*Amy Fulgium v. Christopher Fulgium*, No. 1753, September Term, 2017.  Opinion by Graeff, J.

UNIFORMED  SERVICES  FORMER  SPOUSES'  PROTECTION  ACT; MARITAL SHARE OF A MILITARY PENSION

Military pensions may be considered divisible marital property "[s]ubject to the limitations" of 10 U.S.C. § 1408.  These limitations include that only "disposable retired pay" may be considered marital property, and the benefit is frozen at the time of divorce, as opposed to the time of retirement.  Thus, under § 1408(a)(4), when there is a final decree of divorce prior to the date of the member's retirement, disposable retired pay is "the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service on the date of the decree of divorce."  To the extent this is inconsistent with the formula generally used in Maryland, it preempts state law.

The USFSPA limits what is considered disposable military retirement pay that may be divided as marital property.  It permits distribution only of disposable retired pay, but it does not require distribution.  A state court has discretion whether to divide the disposable retired pay, and if so, how, in accordance with state law.

The circuit court's rationale in awarding Ms. Fulgium 15% of Mr. Fulgium's disposable retired pay is not entirely clear, but based on the court's comments, the percentage of retired pay the court awarded does not appear to be correct.  Accordingly, we must vacate the judgment and remand for further proceedings.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1753

September Term, 2017

_____

AMY FULGIUM

v.

CHRISTOPHER FULGIUM

_____

Meredith,
Graeff,
Raker, Irma. S.
        (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Graeff, J.
_____

Filed:  February 27, 2019

This case arises from a divorce action between Amy Fulgium, appellant, and Christopher Fulgium, appellee. On July 31, 2017, the Circuit Court for Prince George's County issued a Judgment of Absolute Divorce and a Constituted Pension Order relating to Mr. Fulgium's military retirement benefits.

On appeal, Ms. Fulgium challenges only the award of military retirement benefits. In that regard, she presents five questions for this Court's review,[1] which we have consolidated and rephrased, as follows:

1. Did the circuit court err in incorrectly calculating Ms. Fulgium's marital share of Mr. Fulgium's military pension?

---

[1] Ms. Fulgium presents the following five questions for review:

1. Did the Trial Court Err as a Matter of Law by Incorrectly Dividing the Appellee's Pension Under Maryland Law?

2. Did the Trial Court Incorrectly Conflate the Mechanism of Payment of a Military Pension Division with the Actual Award of Military Retirement Benefits to a Former Spouse Thereby Reducing Appellant's Share of the Military Pension?

3. Did the Trial Court Incorrectly Calculate the Formula to be Applied to the Determination of the Appellant's Share of the Military Retirement Benefits?

4. Did the Trial Court Err as a Matter of Law When it Failed to Consider the Mandatory Factors of Md. Code, Fam. Law § 8-205(b) in Dividing the Appellee's Military Pension?

5. Did the Trial Court Err as a Matter of Law by not Entering a Judgment of Absolute Divorce and Constituted Pension Order that Awarded COLAs to Appellant's Share of Appellee's Military Pension After Specifically Orally Granting Such COLAs to Appellant's Share of Appellee's Military Pension?

2. Did the circuit court err by not entering a constituted pension order that awarded cost-of-living adjustments to Ms. Fulgium's share of Mr. Fulgium's military pension?

For the reasons set forth below, we answer the first question in the affirmative, and therefore, we shall vacate the judgment of the circuit court and remand for further proceedings.

<strong>FACTUAL AND PROCEDURAL BACKGROUND</strong>

The Fulgiums were married on July 8, 2005. No children were born during the marriage. Mr. Fulgium has been an active duty member of the United States Marine Corps since July 12, 1999.

On May 30, 2017, Mr. and Ms. Fulgium entered into a Partial Marital Settlement Agreement (the "Agreement"). The Agreement settled all issues regarding the divorce, with the exception of alimony, Mr. Fulgium's military pension, and attorney's fees. The parties planned to address these issues at a trial on the merits.

Trial began that same day, May 30, 2017. Ms. Fulgium requested "three years of alimony," a portion of Mr. Fulgium's military pension, and attorney's fees. With respect to the pension, counsel stated that the Federal Government had changed the way pensions were dealt with by the military:

> [I]t used to be like we do with all other pensions, you have the Bangs formula, where the number of years that . . . the parties were married . . . over all the overall time that employee was working for the, for the company. That's no longer the case.
>
> What they now decided on a Federal basis is that the bottom number is frozen as of the time that the parties get divorced, so even though the pension will continue to grow for Mr. Fulgium, my client's not entitled to

2

share in that anymore and that's nothing that this Court decides, it's just what the Federal law now is.

Mr. Fulgium asked that the court deny Ms. Fulgium's claims for alimony and attorney's fees. He asked that the court award him the "full amount of his military retired pay."

At trial, Mr. Fulgium testified that his marriage to Ms. Fulgium first started to deteriorate in 2011, when he became aware that she had been involved in "intimate action with neighbors" while he was deployed. He testified that, although Ms. Fulgium had been "extremely responsible" when they first got married, she began spending a lot of money over the course of the marriage, and money he had saved was depleted.

Mr. Fulgium, who was 36 years old at the time of trial, testified that his rank in the Marines was a "Chief Warrant Officer 2." According to his W-2 forms for the years 2014, 2015, and 2016, he made $52,950.60, $56,264.45, and $60,195.60, respectively. Mr. Fulgium had a high school education, and he used his GI bill, in the amount of approximately $27,000, to help Ms. Fulgium earn her master's degree.

Ms. Fulgium, who was 31 at the time of trial, was living in California. She testified that she received her master's degree in 2014. It took her three years to complete the degree, and she received 12 months' credit from the GI bill.

Ms. Fulgium testified regarding her health during the marriage. She had several medical conditions that required surgery, and Mr. Fulgium helped her after the surgeries. As of the date of trial, however, Ms. Fulgium was healthy, with no health complications.

Ms. Fulgium testified that, in 2016, her annual earnings were $55,582.17. Her monthly expenses were less than her earnings.

After the evidence was presented, counsel for Mr. Fulgium asked that he receive his full share of his retired pay. Counsel for Ms. Fulgium requested that she be awarded a share of the pension "from the date they got married until the date they got divorced."

On June 27, 2017, the circuit court held a disposition hearing. The court denied each party's request for attorney's fees, and Ms. Fulgium's request for alimony.

With respect to Mr. Fulgium's military pension, the court discussed the "National Defense Authorization Act of fiscal year 2017, known as [N]DAA 17," which revised "how pension orders are written and will operate." The court stated:

> In accordance with [N]DAA 17, the hypothetical retired pay attributable to the rank and years of service of a military member at the time of the applicable order will be divided rather than a percentage of the total retirement following the service member's retirement. So the [c]ourt has used this with regard to the pension.

> The pension benefit to be divided is frozen as of the date of the entry of this order, which will be if one of you does the order. The only adjustment will be the cost of living adjustment made under 10 U.S.C. Section 1401(a)(b) between the time of the court order [and] the time of retirement.

> In practice, this number is gathered by the highest 3 years of continuous pay. That's often the most 3 recent years. This element must be multiplied with the retired pay multiplier, which is 2.5 times of credi[table] service at the time of the order.

> Here, Mr. Fulgium submitted his W-2 statements for 2014, 2015, and 2016, tax forms reflecting annual compensation of $52,950.60, $56,463.95, and $60,195.60 respectively. Therefore, on average, Mr. Fulgium earned $56,536.72 over the past 3 years. He has been enlisted in the Marine Corps for 215 months, which equals 17.9 years, resulting in a retired pay multiplier of 0.448. The 17.9 years credited times 2.5 percent when this amount is multiplied by the highest three, the resulting gross pay amount is $25,300.18.

4

Thus using the formula under [N]DAA 17, which was passed December of 2016[,] [Ms.] Fulgium shall be awarded 15 percent of disposable military retired pay Mr. Fulgium would have received, had the member retired with retired base high of $56,536.72, as of today, June 27, 2017.

So as of today—well, this number has to be adjusted because the order is not ready today. I need to redo this, recalculate this, but as of today's date, Mr. Fulgium's retired base pay is $56,536.72 following 17 years, 19 [sic] months of credible service. That, to date, Mr. Fulgium's annual payout in accordance with that 215 months of service is at an annual rate of $25,300.18. [Ms.] Fulgium should be awarded marital portion of pension as had accrued on the date of this order using that formula.

In response to the circuit court's oral ruling, counsel for Ms. Fulgium asked the court to clarify whether it awarded Ms. Fulgium 50% of Mr. Fulgium's disposable military pay or 15%. The following colloquy between the court and counsel for Ms. Fulgium ensued:

THE COURT: Fifteen. I did that because of the number. When you take the number, when I multiplied, it came out to be $16,000; and 50 percent of that 16, which is the 12 years they were married, the 50 percent of the 16 is $8,000. That $8,000 is 15 percent of the $25,000. That makes sense.

[COUNSEL]: It didn't, to me.

THE COURT: When you figure it out using the formula, it is different. But when I figured out the formula, by using the formula I did, I came up with a number that was $16,000-and-some-odd dollars.

[COUNSEL]: Which was what?

THE COURT: Which was based on his years of service while they were married. And 50 percent of that $16,000, which would be her pension, 50 percent of that would be $8,000. The $8,000 then from the $25,300.18 -- I'm sorry. The 15 percent of that is $8,000. So that's why I said 15 percent of that $25,000 number. That might have been a convoluted way to say it.

[COUNSEL]: Off the top of my head, wouldn't $8,000 – if you use 25, wouldn't that be roughly a third?

THE COURT: No. It's 50 percent of the 16. The 25,000 is 15 percent.

5

[COUNSEL]: Right.

THE COURT: Oh, you're saying a third. 32 percent? I think you're right. I think I did that wrong.

[COUNSEL]: It would seem to me that –

THE COURT: I think you're right. That number is incorrect.

The goal is [Ms.] Fulgium will be awarded 15 percent of disposable military retired pay, [that] Mr. Fulgium would have received, had he retired with a retired base high of $56,536.72 with his 17 years and 9 months of creditable service as of today's date.

The circuit court explained that the 15% was 50% of the 11.11 years they were married, which was $16,000, and 50% of that "is 8." The court stated that it would order "that [Ms.] Fulgium shall be granted the marital portion of Mr. Fulgium's military pension in accordance with the National Defense Authorization Act of 2017," and it requested that counsel "draft the appropriate military divorce order in accordance with the National Defense Authorization Act of 2017, for the division of Mr. Fulgium's military pension." With respect to Ms. Fulgium's entitlement to cost-of-living adjustments ("COLAs") for her share of Mr. Fulgium's military pension, the court stated that it believed that Ms. Fulgium was entitled to COLA, but "[i]t's whatever the law says."

After the circuit court's oral ruling, the parties could not agree on the terms for the order dividing military retirement pay. The circuit court requested that each party submit a proposed order for the court's review.

6

On July 31, 2017, the court issued the Constituted Pension Order,[2] which stated, in pertinent part, as follows:

> 4. This Order is intended to qualify under the Uniformed Services Former Spouses Protection Act (USFSPA), 10 U.S.C. Sec. 1408 *et seq.*, as amended by the National Defense Authorization Act of 2017 (NDAA), with all provisions to be interpreted in light of USFSPA, as amended.
>
> *       *       *
>
> 6. (a) The Former Spouse is awarded 15% of the disposable military retired pay of the Member;
>
> (b) As of the date of the Judgment of Absolute Divorce on July 27, 2017, the Member's military retired base pay (High-3) was $4,826.28, and the member had 17 years and 11 months of creditable service.
>
> (c) Former Spouse is entitled to direct payment from the military pay center, known as the Defense Finance and Accounting Service (DFAS), to the extent permitted by law, at the same times as Member receives his retired pay. In accord with the applicable law and regulations, payments of the retired pay to Former Spouse shall terminate upon the death of Member or the death of Former Spouse, whichever shall occur first.

On August 21, 2017, Ms. Fulgium filed a Motion to Alter or Amend Judgment of Absolute Divorce and Constituted Pension Order. On October 31, 3017, the circuit court entered an order denying the motion.

This appeal followed.

---

[2] The order stated that it was "issued pursuant to the domestic relations law of Maryland and specifically Maryland Family Law Code Sec. 8-205(a)."

## DISCUSSION

Ms. Fulgium contends that the circuit court misinterpreted federal statutes addressing military retirement benefits and incorrectly divided Mr. Fulgium's military pension. She asserts several contentions in this regard, which will be discussed, *infra*.

Mr. Fulgium contends that the circuit court correctly applied the federal statutes addressing military retired pay, and these statutes preempt conflicting state law. He asserts that, after applying the federal statutes, the court properly exercised its discretion in awarding Ms. Fulgium less than half of the marital portion of his military retired pay based on its findings that his contributions "far exceeded" the contributions made by Ms. Fulgium. He argues that the court "had discretion to award less than an equal marital share, and it was not required to follow any set formula."

Before addressing Ms. Fulgium's specific arguments, we will give some background on the law regarding military retirement benefits. "Military retired pay is a federal entitlement that, much like a pension, provides a monthly annuity for life upon retirement from the armed forces." *Dziamko v. Chuhaj*, 193 Md. App. 98, 116, *cert denied*, 416 Md. 273 (2010). As Judge Nazarian explained for this Court in *Hurt v. Jones-Hurt*, 233 Md. App. 610, 619 (2017):

> Marriage, divorce, and the division of marital property are quintessentially matters of state law, and pension or retirement benefits normally are considered marital property at the time of divorce. But military benefits are creatures of federal law, and the treatment of military benefits in state divorce proceedings has been a source of federal and state tension for decades.

Prior to June 26, 1981, military pensions were considered to be divisible marital property in Maryland. *Collins v. Collins*, 144 Md. App. 399, 421–22 (2002). In 1981, in

8

*McCarty v. McCarty*, 453 U.S. 210, 232–33 (1981), the United States Supreme Court held that the federal law "governing military benefits preempted state family law and precluded those benefits from being treated as community property in state divorce proceedings." *Hurt*, 233 Md. App. at 619–20. The Court of Appeals subsequently held that the rationale in *McCarty* applied in Maryland, an equitable distribution state, precluding a court from dividing military retirement pay as marital property. *Hill v. Hill*, 291 Md. 615, 620-21 (1981).

In 1982, in response to *McCarty*, "Congress enacted the Uniform Services Former Spouses Protection Act" ("USFSPA," or "the Act"), codified at 10 U.S.C. § 1408. *Howell v. Howell*, 137 S.Ct. 1400, 1403 (2017). *Accord Andresen v. Andresen*, 317 Md. 380, 383 (1989). The purpose of the Act was to place courts in the same position they were in prior to the *McCarty* decision with respect to non-disability military retired pay. *Andresen*, at 383. The Senate report stated that the Act was

> intended to remove the federal preemption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent state or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this [Act] requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution.

*Id.* at 383–84 (quoting Senate Report No. 97-502, July 22, 1982, reprinted in 1982 *U.S. Code Cong. & Admin. News*, 1555, 1596, 1611).[3]

---

[3] The Supreme Court subsequently stated that, "[b]ecause domestic relations are preeminently matters of state law," the Court would not find that Congress intended to preempt state law in this area absent evidence that it was "'positively required by direct

The USFSPA provides: "Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). Thus, "[s]ubject to the limitations" of § 1408, a state court may divide a military pension as marital property pursuant to Maryland law.

One of the limitations on a court's ability to divide a military pension is that only "disposable retired pay" may be considered marital property. *Id.* The statute defines "disposable retired pay" as "the total monthly retired pay to which a member is entitled," less certain amounts, such as military retirement pay waived to receive disability payments. 10 U.S.C. § 1408(a)(4)(A). [4] By excluding from its "grant of authority the disability-related

---

enactment.'" *Mansell v. Mansell*, 490 U.S. 581, 587, 597 (1989) (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979)). *Accord Hurt v. Jones-Hurt*, 233 Md. App. 610, 629 (2017) (quoting *Hisquierdo* for the same proposition).

[4] 10 U.S.C. § 1408(a)(4)(A) provides as follows:

4(A) The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which—

(i) are owed by that member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;

(ii) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-martial or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;

---

waived portion of military retired pay," the USFSPA provides a limited grant of power to divide military retired pay. *Howell*, 137 S. Ct. at 1404. State courts still are preempted from treating as divisible marital property military retirement pay waived by the retiree to receive disability payments. *Howell*, 137 S. Ct. at 1406; *Mansell v. Mansell*, 490 U.S. 581, 589 (1989); *Hurt*, 233 Md. App. at 626. Thus, only a portion of retired pay may be treated as marital property that can be divided in divorce proceedings.

Another significant limitation was included in the National Defense Authorization Act for Fiscal Year 2017 ("NDAA17"), signed on December 23, 2016. *See* Pub.L. 114-328, 130 Stat. 2164, 2418 (Dec. 23, 2016). This amendment to § 1408 was intended to modify "the division of military retired pay in a divorce decree to the amount the member would be entitled based upon the member's pay grade and years of service at the time of the divorce rather than at the time of retirement." S. Rept. 114-255, National Defense Authorization Act for Fiscal Year 2017, at 168 (114th Congress, 2016); Kristy N. Kamarck, Cong. Research Serv., RL31663, *Military Benefits for Former Spouses: Legislation and Policy Issues*, at 15 (2018) (hereinafter "CRS Report"). Rather than dividing actual retired pay at the time of retirement, the benefit would be frozen at the time of divorce. The

---

        (iii) in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list); or

        (iv) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section.

rationale for using a "date of divorce" method for pension valuation was that a former spouse would not receive a windfall benefit from promotions and other pay increases that accrued from the date of divorce to the date of retirement, to which the former spouse made no contribution.  *See* CRS Report, 15.

The new provision stated, in relevant part, that "the total monthly pay to which a member is entitled," i.e., "disposable retired pay," "shall be the amount of basic pay payable to the member for the member's pay grade and years of service at the time of the court order," plus cost of living adjustments.  10 U.S.C. § 1408(a)(4)(B).  In the National Defense Authorization Act for Fiscal Year 2018, Congress made technical corrections to this provision to clear up language problems in the NDAA17.  *See* Pub. L. 115–91, 131 Stat. 1283, 1429 (Dec. 12, 2017); Brentley Tanner & Amelia Kays, *Winds of Change: New Rules for Dividing the Military Pension at Divorce*, 30 J. Am. Acad. Matrimonial Law 491, 497 (2017-2018).  The current version of the statute provides that, in the situation where there is a final decree of divorce prior to the date of the member's retirement, disposable retirement pay is based on "the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service on the date of the decree of divorce, dissolution, annulment, or legal separation, as computed under section 1406 or 1407 of this title, whichever is applicable, increased by the sum of specified cost of living adjustments[.]"[5]  10 U.S.C. § 1408(a)(4)(B).

---

[5] The amendments "take effect on December 23, 2016, as if enacted immediately following the enactment of the National Defense Authorization Act for Fiscal Year 2017 (Public Law 114-328) to which such amendments relate."  Pub. L. 115–91, 131 Stat. 1430 (Dec. 12, 2017).

The USFSPA provides that, under certain circumstances, the nonmilitary spouse may obtain his or her share of disposable retired pay directly from the federal government, i.e., the Defense Finance and Accounting Service ("DFAS"). 10 U.S.C. § 1408(d)(1). To be eligible for direct payment, there must be a court order, incident to a final decree of divorce or legal separation, providing for the payment of an amount of the disposable retired pay. § 1408(a)(2)&(d)(1); *accord* CRS Report, 2. After service on the Secretary of such an order, "the Secretary shall make payments (subject to the limitations of [§ 1408]) from the disposable retired pay . . . to the spouse or former spouse. *Id.*

One of the limitations on direct payment is that it is available only when the service member performed ten or more years of creditable military service while married to his or her spouse. 10 U.S.C. § 1408(d)(2). *See Mansell*, 490 U.S. at 585. *Accord Dziamko*, 193 Md. App. at 119 (direct payment of military pension not possible where parties married only seven years). Another limitation is that "the Federal Government will not make community property payments that exceed 50 percent of retired disposable retired or retainer pay." *Mansell*, 490 U.S. at 585. *See* § 1408(e)(1) ("The total amount of disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay.").[6]

_____

[6] There has been debate in the state courts regarding whether § 1408(e)(1) is a cap on total distribution or only direct pay. *See Selitsch v. Selitsch*, 492 S.W.3d 677, 684 n.3 (Tenn. Ct. App. 2015) (although the Federal Government may not make payments that exceed 50 percent of disposable retired pay, the USFSPA does not prohibit the court from awarding more than 50 percent to a former spouse when making an equitable distribution in a divorce proceeding); *Meyer v. Meyer*, 952 So.2d 384, 386 (Ala. Civ. App. 2006) (the USFSPA "limits to 50 percent the amount" of a member's pay that DFAS can directly pay

In sum, the USFSPA limits what is considered disposable military retirement pay that may be divided as marital property. It permits distribution only of disposable retired pay, but it does not require distribution. A state court has discretion whether to divide the disposable retired pay, and if so, how, in accordance with state law. *See* CRS Report, 2–3.

With this background in mind, we address Ms. Fulgium's specific arguments.

## I.

Ms. Fulgium initially contends that the circuit court should have calculated the division of the military pension using the "if, as, and when" basis set forth in *Bangs v. Bangs*, 59 Md. App. 350, 367–68 (1984). She summarizes the *Bangs* formula as: "the employee's total pension benefit at the time of his retirement multiplied by a fraction, the numerator of which is the employee's total years of service during marriage and the denominator of which is the employee's total years of service at retirement (which is the so-called 'marital share'), which is then multiplied by fifty percent (50%), to arrive at the non-employee's share of the employee's pension benefit." Ms. Fulgium asserts that this

---

to a former spouse, but this does not constitute an absolute cap on the percent of disposable retired pay that a court may award). *Accord Ex parte Smallwood*, 811 So.2d 537, 539 (Ala. 2001) (§ 1408 allows a state trial court to award more than 50% of a retiree's disposable military retirement pay.); *Deliduka v. Deliduka*, 347 N.W.2d 52, 55 (Minn. Ct. App. 1984) (the Act limits direct government payments to former spouses to 50 percent of disposable retired pay, such that payments in excess of 50 percent must be made "by the member of the military to the spouse"). *Cf. In re Marriage of Bowman*, 972 S.W.2d 635, 639 (Mo. Ct. App. 1998) (§ 1408(e)(1) "sets a fifty percent cap on retired pay awarded to former spouses"). Although this issue is not presented in this case, it appears to us that the better reasoned view is that the 50 percent cap relates only to direct pay.

formula cannot be frozen prior to retirement, and therefore, the proper calculation of her marital share of the military pension is "145 months married/total number of months of service x 50% x retired pay at benefit commencement."

Mr. Fulgium contends that the court correctly calculated Ms. Fulgium's marital share of Mr. Fulgium's military pension. He asserts that the federal statute preempts state law with respect to a marital property award requiring the division of military retired pay, and the court "correctly applied federal law to the division of [his] "retired military pay." [7]

As indicated, 10 U.S.C. § 1408 permits courts to apply state law in determining whether military retired pay should be divisible. *Andresen*, 317 Md. at 383–84. In Maryland "[a]n interest in a military pension is marital property to the extent it was earned during the marriage." *Woodson v. Saldana*, 165 Md. App. 480, 488 (2005). Pursuant to FL § 8-205, the court may transfer ownership of a pension or retirement plan from one party to either or both parties after considering various factors.[8] Thus, "[s]ubject to the

---

[7] In support of this contention, Mr. Fulgium cites to the United States Department of Defense's Financial Management Regulation, Volume 7B, entitled "Military Pay Policy and Procedures—Retired Pay" DoD FMR 7000.14–R ("DoD Regs"). This regulation offers a detailed explanation regarding "how a former spouse can apply for payments from a military member's retired pay and how the former spouse's payments will be administered." DoD Regs ¶ 290101.

[8] FL § 8-205(b) sets forth the following factors that the court must consider in determining the terms of transfer of a retirement plan or a monetary award:

> (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;
> (2) the value of all property interests of each party;
> (3) the economic circumstances of each party at the time the award is to be made;

limitations" of 10 U.S.C. § 1408(c)(1), a military pension may be distributed under FL § 8-205.

In *Dziamko*, this Court explained the possible methods of valuing pension benefits in a divorce proceeding:

> First, a trial court could calculate the value of the member's contributions to the pension during the marriage, plus interest. Second, the court could attempt to compute the present value of the pension when it vests. Third, the court could "'determine a fixed percentage for [the non-member] of any future payments [the member] receives under the plan, payable to [the non-member] as, if, and when paid to [the member].'"

*Dziamko*, 193 Md. App. at 111 (quoting *Deering v. Deering*, 292 Md. 115, 129 (1981)).

In *Bangs*, 59 Md. App. at 368, this Court approved the third option, the "if, as, and when" method to calculate the marital portion of a pension that was earned both during and

---

(4) the circumstances that contributed to the estrangement of the parties;
(5) the duration of the marriage;
(6) the age of each party;
(7) the physical and mental condition of each party;
(8) how and when specific marital property or interest in property described in subsection (a)(2) of this section, was acquired, including the effort expended by each party in accumulating the marital property or the interest in property described in subsection (a)(2) of this section, or both;
(9) the contribution by either party of property described in § 8-201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;
(10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and
(11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property described in subsection (a)(2) of this section, or both.

outside the marriage. Applying this formula, sometimes referred to as the *Bangs* formula, the marital share of a pension is a fraction in which the numerator is number of months of the marriage and the denominator is "the total number of months during which the pension accrues from employment to retirement." *Dziamko*, 193 Md. App. at 112–16. "The non-member spouse's share of the marital portion of the pension is determined by applying an agreed-upon fixed percentage to it. That fixed percentage then is applied to any future payments received under the pension plan." *Id.* at 112. This formula has been "codified as the default method in Maryland" under FL § 8-204(b).[9] *Id.* Using the *Bangs* formula, Ms. Fulgium states that her marital share should be calculated using the following formula: "145 months married/total number of months of service x 50% x retired pay at benefit commencement."

Ms. Fulgium's appellate argument, that the "court erred as a matter of law" in not applying the *Bangs* formula, fails for several reasons. First, her argument in this Court, that the circuit court erred because, pursuant to *Bangs*, the formula cannot be frozen before retirement, is inconsistent with what she argued below. In argument at trial, and in a subsequent email submitted to the court regarding the proposed Constituted Pension Order, counsel for Ms. Fulgium argued that the proper analysis was to use the formula set forth in the USFSPA, which counsel characterized as the *Bangs* formula with a modification. Counsel specifically argued, consistent with the recent amendment, that "the denominator

_____

[9] FL § 8-204(b)(1) provides that "[t]he court need not determine the value of a pension, retirement, profit sharing, or deferred compensation plan, unless a party has given notice in accordance with paragraph (2) of this subsection that the party objects to a distribution of retirement benefits on an 'if, as, and when' basis."

17

of the marital portion fraction stops at the time of divorce, since the military member's benefit is considered to be 'frozen' at this point."

Under these circumstances, Ms. Fulgium's contention is not preserved for this Court's review. *See* Md. Rule 8-131(a) (an appellate court ordinarily will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court"). *Accord Sutton v. FedFirst Fin. Corp.*, 226 Md. App. 46, 80 n.18 (2015), *cert. denied*, 446 Md. 293 (2016) (declining to address an argument that was not made below); *Krause Marine Towing Corp. v. Association of Maryland Pilots*, 205 Md. App. 194, 223 (2012) (an argument is not preserved when it is "different from and inconsistent with" the argument offered to the circuit court).

This Court, however, has discretion under Md. Rule 8-131(a) to address an unpreserved issue. *Jones v. State*, 379 Md. 704, 712–14 (2004). Because this case will be reversed and remanded on other grounds, and because the parties were unable to find any cases addressing the formula to be used in light of the recent amendments to the USFSPA, we will address it. *See Hartman v. State*, 452 Md. 279, 299 (2017) (court may elect to review an unpreserved issue when there likely will be further proceedings).

The USFSPA, as amended by the NDAA17 in 2016, specifically sets forth the method of calculation of disposable retired pay when there is a divorce prior to the member's retirement. It provides that "disposable retired pay," in the situation where there is a final decree of divorce prior to the date of the member's retirement, is calculated "using the member's retired pay base and years of service on the date of the decree of divorce, dissolution, annulment, or legal separation, as computed under section 1406 or 1407 of this

18

title, whichever is applicable, increased by the sum of 'cost-of-living adjustments[.]'" 10 U.S.C. § 1408(a)(4)(B)(i). The language in the statute makes clear, and federal regulations confirm, that when, as here, a divorce occurs after December 23, 2016, and the member has not yet retired, "[t]he amount of retired pay is limited to that which the member would have been entitled using the member's retired pay base and years of service on the date of the final decree of divorce, dissolution, annulment, or legal separation." Department of Defense Financial Management Regulations 7000.14–R ("DoD Regs") ¶ 290802.

The formula set forth in the USFSPA, to the extent it is inconsistent with the *Bangs* formula, preempts state law. *See Mansell*, 490 U.S. at 587 (Congress preempts state law when that result is "'positively required by direct enactment'") (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979)). Accordingly, the circuit court here was required to apply this analysis in assessing the marital share of military retired pay, where the divorce became final after December 23, 2016, and before Mr. Fulgium retired. Ms. Fulgium's contention to the contrary is without merit.

Moreover, we note that the formula set forth by Ms. Fulgium suggests that the court was required to give her 50 percent of the pension. That is not correct. Neither FL § 8-205 or 10 U.S.C. § 1408 mandates any division of a military pension. Whether to award retirement funds, and if so, how to allocate them, is within the discretion of the trial court. *Long v. Long*, 129 Md. App. 554, 574 (2000).

## II.

Ms. Fulgium next argues that, even if the formula set forth in the USFSPA controls, the court incorrectly calculated it. She asserts that, under the USFSPA, the correct formula

19

is the "marital fraction (the numerator of which is [Mr. Fulgium's] years of service during marriage and the denominator of which is [Mr. Fulgium's] total years of service as of the date of award) x 50%," which results in the following formula:

> 145 months married during service/217 months of service to date of divorce x 50%=33.41%.

Ms. Fulgium argues that the court erred in using an average of Mr. Fulgium's last 36 months base salary in determining the percentage formula.

Mr. Fulgium argued in his brief that the court "correctly applied federal law to the division of [his] military retired pay." At oral argument, however, counsel conceded that the analysis set forth in the circuit court's oral opinion was incorrect. Counsel asserted, however, that the written order, which reached the same conclusion, was made using the proper analysis. Given the lack of any indication that the court's written order reflected anything other than the analysis it set forth in court, we are not persuaded by that argument.

We set forth the court's ruling in its entirety, *supra*. This ruling shows that the court intended to transfer a portion of Mr. Fulgium's retirement pay to Ms. Fulgium. And it clearly attempted to follow federal requirements to issue an order that permitted Ms. Fulgium to receive direct pay from the government when Mr. Fulgium retired. As we will explain, however, the final step in the analysis was incorrect.

The court properly began by determining Mr. Fulgium's average salary for the three years prior to the order. Pursuant to the USFSPA,

> in the case of a division of property as part of a final decree of divorce . . . that becomes final prior to the date of a member's retirement, the total monthly retired pay to which the member is entitled shall be—

. . . the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service on the date of the decree of divorce, dissolution, annulment, or legal separation, as computed under section 1406 or 1407 of this title, whichever is applicable, increased by the sum of the cost-of-living adjustments[.]

Section 1408(a)(4)(B).[10]

Section 1407 of the USFSPA, applicable here,[11] provides that a member's retired pay base "is the person's high-three average," which is "the total amount of monthly basic pay to which the member was entitled for the 36 months (whether or not consecutive) out of all the months of active service of the member for which the monthly basic pay to which the member was entitled was the highest, divided by . . . 36." § 1407(c)(1)(A)-(B). Applying this analysis, the court found, and the parties do not dispute, that Mr. Fulgium's average salary in the three years prior to the order was $56,536.

The court's analysis up to this point, finding that Mr. Fulgium's retired pay base was $56,536.72, was essentially correct. The court's analysis regarding how to divide that retirement benefit, however, is not as clear.

As indicated, it is within the court's discretion, after considering the factors set forth in FL § 8-205, to determine how to equitably divide a pension or retirement plan. If the

---

[10] As indicated, this statutory provision, which took effect in 2017, applies to cases "where the former spouse and member were divorced after December 23, 2016, [when] the court awards the former spouse a division of property, and the member has not yet retired." DoD Regs ¶ 290801.

[11] Section 1407 applies to people who became members after September 7, 1980. 10 U.S.C. § 1407. As discussed, Mr. Fulgium joined the Marine Corps in 1999. Section 1406 applies to people who became members before September 8, 1980.

court intends to issue an order providing for direct pay by the Government, however, the federal regulations provide that the order must meet certain requirements. The "award must be expressed as a fixed dollar amount or as a percentage of disposable retired pay." DoD Regs ¶ 290601(C). In the situation here, where the divorce occurred "before the member became entitled to receive military retired pay, the retired pay may be expressed as a formula or hypothetical retired pay award." DoD Regs ¶ 290601(E).[12]

The record indicates that the court intended to give a hypothetical retired pay award. Such an award is defined as:

> Hypothetical retired pay award is an award based on a percentage of retired pay that is calculated using variables provided in a court order that are different from the member's actual retirement variables. The retired pay calculated using the ordered variables is called the member's hypothetical retired pay. A hypothetical award typically attempts to define the property interest in the retired pay as if the member had retired at the time the court divided the member's military retired pay based upon the member's rank, or high-3 amount, and years of service accrued to that point in time. Thus, the former spouse does not benefit from the member's pay increases due to promotions or increased service time after the divorce.

DoD Regs ¶ 290213.

The Regulations give further guidance on "Acceptable Hypothetical Retired Pay Awards," as follows:

> A. A hypothetical retired pay award is a percentage of a retired pay amount calculated using the standard method to compute retired pay, but using variables different from those used to calculate the member's actual retired pay. It is usually calculated as if the member had become entitled to receive retired pay at the time the court divided the member's retired pay.

---

[12] Because "the computation of formula and hypothetical retired pay awards result in a percentage, they are considered a type of percentage award, and would automatically receive a proportionate share of the member's retired pay COLA." DoD Regs ¶ 290601(E).

B. To calculate a hypothetical retired pay award, the designated agent must first calculate the hypothetical retired pay amount. The hypothetical retired pay amount is calculated by multiplying the hypothetical retired pay multiplier times the hypothetical retired pay base. If the initial retired pay computation is not a multiple of $1, it is rounded down to the next lower multiple of $1. . . .

C. Retired Pay Multiplier

1. The standard retired pay multiplier is 2.5 percent times the member's years of creditable service. . . . In the case of a hypothetical retired pay award, the hypothetical retired pay multiplier is determined by multiplying 2.5 percent times the hypothetical years of creditable service provided in the court order. The resulting percentage is rounded two decimal places. . . .


\*　　　\*　　　\*


D. Retired Pay Base

\*　　　\*　　　\*


2. . . . is the average of the member's highest 36 months of basic pay at retirement (high-3 amount). . . . their average basic pay for the most recent 36 months prior to the hypothetical retirement date.

E. In order to enable the designated agent to calculate the hypothetical retired pay amount, the court order must provide:

1. The percentage the former spouse was awarded;

2. The hypothetical years of creditable service . . . ;

3. The hypothetical retired pay base. . . . ; and

4. The hypothetical retirement date.

DoD Regs ¶ 290608.

Here, as indicated, the court found, pursuant to DoD Regs ¶ 290608(D), that Mr. Fulgium's retired pay base, his average basic pay the prior 36 months, was $56,536.72 per year.[13] Pursuant to 10 U.S.C. § 1409 and DoD Regs ¶ 290608(B)&(C), the court, in determining Mr. Fulgium's ultimate retirement pay, calculated a hypothetical retired pay amount by using the standard retired pay multiplier of 2.5% times Mr. Fulgium's years of creditable service. The court, therefore, multiplied 2.5% and 17.9 years (.025 x 17.9 = .448) and rounded the percentage to 0.45.

The court then, pursuant to DoD Regs ¶ 290608(B), multiplied the hypothetical pay base of $56,536 by 0.45, the hypothetical retired pay multiplier, to get a hypothetical pay amount of $25,330. Up to this point, the court's calculations were, with slight modifications, correct.[14]

The next step was to consider the marital share of this amount. The Fulguims were married for 12 of Mr. Fulgium's 18 years of service, or 67% of the time. Applying this

---

[13] The court's order stated, however, that Mr. Fulgium's monthly base pay was $4,826.28, or $57,915.36 annually.

[14] The court's oral ruling calculated Mr. Fulgium's years of creditable service as of the date of the oral ruling. Pursuant to 10 U.S.C. § 1408(a)(2), however, a "court order" means a final decree of divorce. The ultimate order calculated Mr. Fulgium's time of creditable service as 17 years and 11 months. By our calculations, because Mr. Fulgium entered the service on July 12, 1999, and the date of the Judgment of Absolute Divorce was July 30, 2017, Mr. Fulgium's years of service as of the time of the court order was 18 years, or 216 months. This does not change, however, the hypothetical retired pay multiplier of 0.45. Multiplying that by $57,915, the pay base included in the court's order, results in a hypothetical pay amount of $26,061. The figures for the proper hypothetical pay amount should be revisited on remand.

percentage to the hypothetical pay amount of $26,061 equals $17,461. Dividing that amount, the marital share, by 50%, which appears to be what the court intended, equals $8,730.[15] That figure of $8,730, however, represents approximately 33% of the hypothetical pay amount of $26,061, not 15%.

The rationale for the court's determination that Ms. Fulgium would receive 15% of Mr. Fulgium's disposable retired pay is not entirely clear, but based on the court's comments, the percentage of retired pay the court awarded does not appear to be correct. Accordingly, we must vacate the judgment and remand for further proceedings.[16] On remand, the court shall make clear what percentage of this marital asset Ms. Fulgium should receive and the basis for its determination.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED AND REMANDED. COSTS TO BE PAID BY APPELLANT.**

---

[15] Our review of the record does not reflect, as Mr. Fulgium alleges, that the judge intended to award Ms. Fulgium less than an equal share of the marital portion of the pension. Rather, as indicated *supra*, the court made specific reference to giving Ms. Fulgium 50% of the marital portion of the military pension.

[16] With respect to Ms. Fulgium's contention that the circuit court erred "when it failed to include any COLAs to [her] marital share of [Mr. Fulgium's] military pension in the entered judgment of absolute divorce and constituted pension order" we note that DoD Regs ¶ 290601 explains, in relevant part: "A retired pay award expressed as a percentage will automatically receive a proportionate share of the member's cost-of-living adjustment (COLA)."