*Kelly Marie Harrigan Campbell v. Kevin John Campbell*, No. 911, Sept. Term, 2023. Opinion by Meredith, J. Filed April 3, 2026.

**DIVORCE – MILITARY RETIREMENT PAY – CALCULATION OF MARITAL PROPERTY COMPONENT OF RETIRING SPOUSE'S RETIREMENT BENEFIT**

In analyzing the portion of military retirement pay earned by a divorcing spouse that constitutes marital property, a Maryland court will generally utilize a computation based upon months of time in service for a service member who retired from active duty and will generally utilize a computation based upon service points for a service member who retired from reserve duty. When the military retirement benefit is the result of a combination of both active duty and reserve service, the court may—and generally should—use a computation based upon points to calculate the portion of the retirement pay that is marital property.

Circuit Court for Anne Arundel County
Case No.: 02-C-08-136227

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 911

September Term, 2023

_____

KELLY MARIE HARRIGAN CAMPBELL

v.

KEVIN JOHN CAMPBELL

_____

Graeff,
Tang,
Meredith, Timothy E.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Meredith, J.

_____

Filed: April 3, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Kelly Marie Harrigan Campbell ("Wife"), appellant, was divorced from Kevin John Campbell ("Husband"), appellee, in the Circuit Court for Anne Arundel County in 2009. Prior to entry of the judgment of divorce, the parties had negotiated a marital settlement agreement that addressed the division of their marital property, including, but not limited to, Husband's military retirement benefits. The marital settlement agreement was incorporated, but not merged, into the Judgment of Absolute Divorce.

Approximately nine years after the parties' divorce, Husband retired from the military. Wife sought a court order directing the Defense Finance and Accounting Service ("DFAS") to pay directly to her the portion of Husband's military retirement pay that she was entitled to receive pursuant to the marital settlement agreement. The parties disagreed about the portion of Husband's military retirement benefits Wife was entitled to receive, and they filed competing motions in the circuit court. The circuit court agreed with Husband's assertion that the correct computation entitled Wife to receive 15.96% of Husband's gross disposable military retired pay, and, on at least two separate occasions, the court entered an order to that effect. The court also ordered Husband to pay Wife backpay for past-due amounts.

Wife noted this appeal and presented three questions:

1. Did the circuit court err as a matter of law when it held that it did not have authority to make substantive changes to the March 3, [2022] order [that held Wife should receive 15.96% of Husband's military retired pay]?

2. Is [Wife] entitled to a 27.3% share of [Husband's] military pension pursuant to [f]ederal law?

3.     Was the circuit court's striking of [Wife's] Supplemental Post Hearing Memorandum arbitrary and capricious[?]

For the reasons set forth herein, we shall affirm the judgment of the circuit court.

## BACKGROUND

The parties married on May 8, 1998, and a final judgment of divorce was entered on April 9, 2009. Prior to the judgment of divorce being entered, the parties entered into a marital settlement agreement on September 19, 2008, wherein they agreed that a portion of Husband's military retirement benefits would constitute marital property that they would divide equally, and they included the following provision in Paragraph 27 of the agreement, stating:

> The parties agree that a court of competent jurisdiction shall enter an order which directs the Maryland Air National Guard to pay directly to Wife such amount as is equal to fifty percent (50%) of the "marital property portion" of Husband's disposable retired pay. **The "marital property portion" of the monthly retired pay shall be <u>a fraction of the total monthly retired pay</u>, and shall be defined as follows: <u>the numerator shall be the total number of points accumulated during Husband's creditable service during the parties' marriage, and the denominator of which shall be the total number of points credited to Husband for retirement purposes</u>.** Husband shall execute such documents and perform such acts as may be necessary or required so that Wife shall receive her share of the gross monthly retired pay directly from the Maryland Air National Guard, including but not limited to any forms which Husband is required to execute by the Maryland Air National Guard in order to effectuate the terms of this Judgment of Absolute Divorce.[1]

---

[1] In *Smith v. Smith*, 266 Md. App. 106, 124-25, *cert. denied*, 492 Md. 430 (2025), we noted that points are earned for military retirement purposes as follows:

> To calculate military retired pay, a member of the military in active service earns one point for each day of active service, while a reservist earns a point for every day certain activities are conducted. *See generally* Department of Defense, DoD 7000.14-R, Financial Management Regulation [hereinafter DoD FMR, Vol. 7B, Ch. 3], Vol. 7B., Ch. 3 (Sept. 2022).

(Emphasis added.)

Although this provision, on its face, suggests that this computation would be relatively simple, the arithmetic was complicated by Husband's continued military service after the divorce. Husband's resumption of full-time active duty resulted in his retirement being classified as an "active duty" retirement rather than a "reserve duty" retirement. Husband's military service was served partly on active duty, but the majority of his service during this marriage was in the reserves. Husband was an active-duty service member in the United States Air Force from May 30, 1990, through April 1, 1999. (As noted above, the parties married on May 8, 1998, and the final judgment of divorce was entered April 9, 2009.) He served on reserve duty in the Air National Guard from September 22, 1999, through June 20, 2013, and, therefore, was on reserve duty at the time of the parties' divorce. Four years after the divorce, Husband resumed active-duty service with the United States Air Force on June 21, 2013, and he remained on active-duty status until he retired from the military on April 1, 2018.

We note that, after this appeal was filed and argued, this Court observed in *Smith*, 266 Md. App. at 126: "[W]hen the military retirement benefit is a result of the combination of active and reserve component service, points are the proper method for calculating the fraction" of the benefit that is marital property. Although that statement is consistent with Husband's position in this case, Wife does not agree that her share should be computed using points, and that led to a number of hearings in the circuit court.

3

It appears the circuit court's post-divorce involvement in the battle regarding the proper calculation of Wife's share of Husband's military retirement pay was initiated on July 19, 2019, when Wife filed a motion that included a section captioned Motion for Appropriate Relief for Co[n]stituted Pension Order. She asserted that, pursuant to "the parties' divorce agreement, [Wife] is entitled to a Constituted Pension Order, awarding her a portion of [Husband's] retirement pay." Although she attached the marital settlement agreement as an exhibit, she did not quote verbatim the language of Paragraph 27 regarding the computation of the "'marital property portion' of Husband's disposable retired pay." Instead, Wife asserted in her motion: "The amount is to be computed by multiplying fifty percent times a fraction, the numerator of which is the number of months of marriage during [Husband's] creditable military service divided by [Husband's] total number of months of creditable service as of the date of divorce [sic]."

Wife's motion of July 19, 2019, further asserted:

The duration of the marriage in relation to the time [Husband] performed creditable [service] for retirement pay is 10 years and 10 months, one hundred and thirty months total. The total amount of [Husband's] active duty service performed was twenty years and nine days or a total of two hundred and forty months. Therefore, the fraction used in the calculation is 130/240. Which means the parties were married 54.17 percent of [Husband's] performed active duty creditable service. Multiplying this by fifty percent equals 27 percent of [Husband's] retired pay which should be awarded to [Wife] in a Constituted Pension Order.

On August 27, 2019, Husband filed an answer to Wife's July 19, 2019 motion, and Husband expressed his disagreement with "the manner in which [Wife] has recited the extent of her entitlement to those [military retirement] benefits." Husband noted that he had filed his own motion on August 15, 2019, requesting that the court enter an order

4

computing Wife's share based on points. In Husband's motion filed August 15, 2019, he asserted:

> b- That [Husband] entered military service on May 30, 1990.
>
> c- That [Husband] retired from the military services on March 31, 2018. . . .
>
> d- That during [Husband's] time in the military, he earned 8369 points.
>
> e- That the parties were divorced from one another on April 3, 2009.
>
> f- That, during the time of the marriage, [Husband] earned 2672 points.
>
> g- That [Wife], pursuant to the [Marital Settlement Agreement dated September 19, 2008,] was entitled to a marital award which was equal to 50% of the percentage of a fraction, the numerator of which were the points earned by [Husband] during the marriage and the denominator of which were the total number of points earned during the time that [Husband served] in the military times the amount of [Husband's] military retirement pay at the time of the divorce.

When converted to a percentage, the fraction produced by dividing 2672 by 8369 is 31.927%, and one-half of that percentage is 15.96%. Husband's motion filed August 15, 2019, asked the court to enter his proposed Order for Division of Military Retirement Pay directing DFAS to pay Wife 15.96% of Husband's disposable military retired pay. In support of this motion, Husband filed a copy of the marital settlement agreement, a proposed order for dividing his military benefits, a document summarizing his service history and points awarded for his service, and a letter from the Department of the Air Force.

5

Litigation skirmishes ensued, including discovery, disputes about discovery, miscellaneous motions and mediation, as well as dealing with the scheduling issues created by the COVID pandemic. Eventually, the circuit court scheduled the competing motions relative to the military retirement pay for an evidentiary hearing on the merits to be conducted on November 18 and 19, 2021. At those hearings, Wife urged the court to consider two issues: modification of child support payments, and issuance of a "constituted pension order" addressing division of Husband's military retirement pay.

With respect to the retirement pay, Wife asserted that the language in the marital settlement agreement regarding a fraction based upon Husband's points should not apply because Husband had retired from the military while serving on active duty. Representing herself at the hearing, Wife argued that her position was supported by *Marquis v. Marquis*, 175 Md. App. 734 (2007). In *Marquis*, this Court observed that a constituted pension order (sometimes referred to as a "CPO") is similar to a Qualified Domestic Relations Order (sometimes referred to as a "QDRO"), but a CPO is "applicable to military retirement pay." *Id*. at 739 n.1.

Wife further argued, at one point during the hearing, that the division of Husband's military retirement pay was governed by Paragraph 26 of the marital settlement agreement rather than Paragraph 27. Her theory was that Paragraph 27 referred to the Maryland Air National Guard whereas Husband's retirement pay was based upon twenty years and nine days of service in the United States Air Force. Wife's contention (at that point) was that Paragraph 27 only "pertains to a National Guard pension." When the court said to Wife, "I

6

understand your position is that it is no longer a National Guard pension because it is now some active-duty pension is your argument[,]" Wife answered yes.

Husband responded, through counsel, that, unlike the *Marquis* case, Wife and Husband in this case expressly agreed to the computation of the marital property portion of Husband's military retirement pay by dividing the points he earned during their marriage by the points Husband earned over the course of his entire service in the military prior to retirement. We see nothing in *Marquis* that precludes the use of points to compute the marital property portion of a spouse's military retirement pay.

Husband further pointed out to the court that, if the fraction was to be computed using only his twenty years and nine days of active-duty service as the denominator, the pertinent active-duty time served *during* his marriage to Wife was only five years, seven months and sixteen days. In his view, if the denominator was 240 *months*, the correct numerator to use would be sixty-eight *months*, which would yield a marital property fraction of 28.3%, and Wife's one-half share of that would be 14.2% of the military retired pay. But his primary argument was that the court should utilize the formula that the parties had agreed to in their marital settlement agreement—which had been incorporated into the judgment of divorce—and the percentage should be calculated using his points for the entirety of his military service in the Maryland Air National Guard and the United States Air Force.

At the conclusion of the two-day hearing, the court orally advised the parties of rulings that would guide the court in framing an order regarding Wife's share of Husband's military retirement benefits. The court recognized that Wife wanted the court to sign an

7

order that would be reflective of her position that the computation of the marital share should be done using months of service instead of service points, and that Wife also asserted that the computation should be done pursuant to Paragraph 26 of the marital settlement agreement (regarding a civil federal pension) rather than Paragraph 27 (regarding military service). But the court was not persuaded by Wife's arguments and explained that, in the marital settlement agreement dated September 19, 2008,

> the parties reached an agreement on how to deal with [Husband's] retirement, and both paragraphs that are pertinent in this case are paragraphs 26 and 27.
>
> There is little argument on the parties' part with regards to the actual figures. We have the date [Husband] began in the military; everyone is in agreement. The date of the marriage; everyone is in agreement. The date of the divorce; everybody is in agreement. And the date of his retirement; everybody is in agreement. Everybody is in agreement as to the points with – and how they are attributed because there was documentation submitted to the [c]ourt.
>
> * * *
>
> [Wife's] argument is . . . that because he retired . . . from the Air Force, it transitions this into a federal retirement and makes it into a federal employee retirement, a FERS, which is then controlled by . . . paragraph 26 . . . . And [Husband's] argument is that . . . it is still military [retirement,] and it is controlled by paragraph 27.
>
> * * *
>
> I do not see any evidence that has been presented to the [c]ourt that this retirement is no longer a military retirement and should be in any way converted to a Federal Employees Retirement System, a FERS.
>
> And . . . the [c]ourt is going to find that paragraph 27 controls. I have read the case law that was submitted by [Wife], and I do not think that that mandates that the [c]ourt apply a <u>Bangs</u> formula. [*See Bangs v. Bangs*, 59 Md. App. 350, 356 (1984).]
>
> * * *

8

So the [c]ourt's ruling is that the constituted pension order . . . with regards to [Husband's] retirement should be in accordance with paragraph 27, and it should be done by points as opposed to by years or time.

The court agreed specifically with Husband's contention that Wife's share of his military retirement pay would be 15.96% of the gross disposable pay, and the court directed Husband's counsel to submit an order consistent with those rulings.

The court signed an order on December 10, 2021, docketed December 14, 2021, finding that "the 'marital portion' of Husband's disposable retired pay is calculated as follows: number of 'points' accumulated for Husband's service during marriage divided by the number of 'points' accumulated by Husband for [his] total service upon retirement[.]" The order included a statement that the court "**FOUND** that the number of points accumulated during the parties' marriage is 2,672 and the number of points accumulated for Husband's total service is 8,369." The court therefore found that "the marital portion of [Husband's] disposable retired pay is 31.93%[,]" and the court granted Wife "a 15.96% share of [Husband's] retirement pay" "commencing on April 1, 2018, the date of Husband's retirement[.]"

On February 2, 2022, Husband's counsel filed a motion asking the court to accept the proposed military retired pay division order counsel submitted, explaining that the parties were at an impasse with respect to approval of the terms that should be included in that order. On February 17, 2022, Wife, through counsel, filed a response objecting to certain language in the draft order submitted by Husband's counsel, and Wife asked the court to sign the alternative pay division order submitted by Wife.

On March 3, 2022, the circuit court entered a Military Retired Pay Division Order, consistent with the terms of the circuit court's December 14, 2021 order. Paragraph 1 of the March 3, 2022 order provided:

> Defendant (Former Spouse) [Wife] is awarded 15.96% of Plaintiff's (Member's) [Husband's] gross disposable military retired pay, without any deductions for survivor benefits or other deductions. The marital property portion of the monthly gross disposable military retired pay shall be: 50% times a fraction – the numerator shall be the total number of points accumulated during the member's creditable military service during the marriage (2672 points); the denominator shall be the member's total number of points accumulated during the member's creditable military service for retirement purposes (8369 points). This fraction shall be multiplied times the amount of the member's gross disposable military retired pay, including any applicable cost of living increases.

Paragraph 6 of the March 3, 2022 order stated:

> This Order is a final judgment. The [c]ourt retains jurisdiction to enter additional orders and to amend this Order for the purpose of acceptance by the military, to effectuate the terms of the parties' Judgment of Absolute Divorce and to settle any and all disputes between the parties relative to the benefits provided in this Order. Any such order may be entered *nunc pro tunc*, if appropriate.

Neither party noted an appeal within thirty days after entry of either the order entered December 14, 2021, or the Military Retired Pay Division Order entered on March 3, 2022.

Instead, it appears that Wife submitted the March 3, 2022 Military Retired Pay Division Order to DFAS with an application for payment of benefits. By letter dated March 21, 2022, DFAS notified the parties that the direct payment of a portion of Husband's benefits to Wife was not approved for the following reasons:

> The Military Retired Pay Division Order must be certified by the Clerk of the Court.

10

Per Volume 7B, Chapter 29, Paragraph 290607 B [of the Department of Defense Financial Management Regulations]:

If the court order requires the designated agent to supply the denominator of a marital or coverture fraction, and the member qualifies for an active duty (i.e., regular service) retirement, the formula award must be expressed in terms of whole months. The numerator of the formula fraction is the number of months of marriage during military service. This number must specifically be provided in the court order. The denominator of the formula is the member's total number of months of creditable military service. The designated agent will provide the denominator if needed to compute the formula. Any days or partial months of service will not be considered. [sic] If the award is expressed in terms of years instead of months.

Please submit a clarifying order which contains the formula in terms of months of service since the member retired as active duty.

Husband's counsel then submitted to DFAS a certified copy of the March 3, 2022 order, and a certified copy of the December 14, 2021 order. DFAS again declined to process the order for direct payment and sent Wife a letter dated June 2, 2022. This letter omitted the reference to Paragraph 290607 B of the Department of Defense Financial Management Regulations ("DoD 7000.14-R") and did not cite any other regulation, but advised:

Your application cannot be approved for the following reason(s):

The court order provides for a division of retired/retainer pay by means of a formula wherein the numerator (length of marriage in months during the marriage) is not specified in months. Member is an active duty retiree, therefore the formula must be in months. **You must obtain a certified copy of <u>a clarifying order awarding *either* a fixed amount, a percentage of the member's retired/retainer pay, *or* which provides a formula</u> wherein the only missing element is the denominator (member's years of service in in months)**.

**<u>You may want to submit a clarifying order with just the percentage since there seems to be a problem creating a formula with</u>**

**MONTHS of service which is required by USFSPA since the member is retired as Active.**

(Emphasis added.) The letter also included this caveat: "[P]lease note that . . . we cannot provide legal guidance in pursuing your case."[2]

On June 22, 2022, Wife moved for entry of a new Order for Military Pension Back Pay and Monthly Payments. The motion recounted the receipt of the two rejection letters from DFAS and attached a report from a consultant who opined that Wife's fractional share of Husband's retirement pay should be 27.3% based on the consultant's calculation using months instead of points.

In response, on July 8, 2022, Husband filed an opposition contesting the opinion of Wife's consultant, and pointing out that the June 2, 2022 letter from DFAS had suggested submitting "a clarifying order with just the percentage[.]" Husband also filed a Counter-Motion for Entry of Amended Military Retired Pay Division Order that removed the

---

[2] We note that this letter's statement that the court's clarifying order must award either a fixed amount or "a percentage of the member's retired/retained pay" was consistent with DoD 7000.14-R 290601.D, which at that time stated: "If the order contains a retired pay award, that award must be expressed as a fixed dollar amount or as a percentage of disposable retired pay." The third option mentioned in the letter—referring to an award based on a "formula"—was consistent with DoD 7000.14-R 290601.F, which at that time stated:

> If the former spouse and the member were divorced before the member became entitled to receive military retired pay, the retired pay award may be expressed as a formula or hypothetical retired pay award in accordance with paragraphs 290607 and 290608. Since the computation of formula and hypothetical retired pay awards result in a percentage, they are considered a type of percentage award, and would automatically receive a proportionate share of the member's retired pay COLAs.

reference to the calculation of Husband's military service based on points and provided only for the payment of 15.96% of Husband's retired pay to Wife.

On July 25, 2022, Wife filed an opposition to Husband's Counter-Motion for Entry of Amended Military Retired Pay Division Order, and Wife requested a hearing. The circuit court scheduled a "complex motions" hearing for December 19, 2022.

On December 19, 2022, the circuit court conducted a hearing on the parties' competing motions. At the hearing, Wife's counsel argued that Department of Defense regulations *mandate* that the marital share of a service member's retired pay be computed using a fraction that utilizes months of marriage as the numerator, and number of months of military service as the denominator, asserting: "[Husband] is retired active duty. And for active duty you need to do a calculation in months." "[Husband is] going to contend that you have to enforce the marital settlement agreement, that there is no choice. But it is wrong, the Government is not going to process this unless it is done using months." Wife's counsel further explained:

> [I]f Your Honor looks at [DoD Regulation] 290607(b) the numerator of the formula fraction is the number of months of marriage during the military service.
>
> * * *
>
> The law says you use the amount of time they were married. That is how it works. That is the numerator.
>
> * * *
>
> If you use the right numerator, you are going to [come] up with 131 over 240 and we are going to be fine.

13

At that point, counsel for Husband interjected: "[Husband] didn't get credit for 131 months toward his military retirement during the marriage. He got credit for 67. So why should [Wife] get credit for more [months] than him?" (Emphasis added.) Wife's counsel replied: "[T]he answer, Your Honor is in the regulations that I gave you."

In support of Wife's argument that the court could not use points to compute Wife's share of this particular marital property, Wife presented expert testimony from retired Major General James V. Young, Jr., a consultant. General Young testified that he had thirty-six years of service in the Army, and that, for a major portion of that time, his position was "what we would think of as the Chief Human Resource Officer of the Army Reserve[,]" dealing with issues such as human resources, pay, benefits and retirement. The court recognized him "as an expert in pension formation."

Asked to explain the difference between an active-duty retirement and a retirement from reserve military duty, General Young said:

> [T]here are essentially two different systems. DFAS is the adjudicating authority for both systems. And . . . if [Husband] had retired as a reservist, then it would have been appropriate to use points. However[,] he retired with an active duty retirement. . . .
>
> And so when that happens . . . you are . . . forced to use a different system. . . . So it is . . . the total months that you were married while you were in service divided by . . . the total month[s] of your active duty service.[3]

---

[3] General Young also opined that the parties satisfied the "10-10 rule" that qualified them to have DFAS make direct payments to Wife. *See Fulgium v. Fulgium*, 240 Md. App. 269, 283 (2019) ("One of the limitations on direct payment is that it is available only when the service member performed ten or more years of creditable military service while married to his or her spouse. 10 U.S.C. § 1408(d)(2). *See Mansell* [*v. Mansell*, 490 U.S. 581, 585 (1989)]. *Accord Dziamko* [*v. Chuhaj*, 193 Md. App. 98, 119 (2010)] (direct payment of military pension not possible where parties married only seven years)."); *see*

(continued…)

14

On cross-examination, General Young conceded that, even though Husband's retirement was properly calculated using a denominator of 240 months, "he was in service for 27 total years[,]" which would equate to 324 months. When asked if all twenty-seven years were for "creditable service," General Young testified: "they are, actually." Husband's counsel pressed this apparent discrepancy further and the following exchange occurred:

> Q [by Husband's counsel:] So just for example, if [Wife] received 10 years as a numerator over [a denominator of] 28 years, she would have 17.8 percent.[4] Here[,] you are trying to argue in this other formulated realm that she should have 27 percent. So you are arguing that [she] should have 10 percent more . . . without [Husband] having part active and part resolution [sic] and part not doing military at all than if he had been enlisted the entire time. How does that make any sense?

> A   I don't think he was ever enlisted. . . . I am not trying to be evasive, I don't quite understand the question.

When Husband's counsel asked General Young to examine one DoD form—which was a form that not only included space for a formula based upon months but also provided alternative spaces for stating a "fixed amount award" or a "percentage award"—the witness replied: "Well, then I guess it would contradict of [sic] what the two letters at DFAS had sent."

Husband's counsel argued to the court that, if the calculation had to be performed using full months of creditable service, that would explain why the military had used only

---

*also Smith*, 266 Md. App. at 116 ("DFAS does not distribute payments directly to former spouses of marriages that, like in this case, lasted less than ten years.").

[4] The arithmetic seems to be: $10 \div 28 = 35.7\%$. One-half of 35.7% is 17.8%

15

twenty years for the denominator rather than the full span of Husband's twenty-seven years in the military. But, if the computation was going to consider only the 240 full months of service as the denominator, then the portion of that time allocated to the marriage should be only five years and seven months (i.e., a numerator sixty-seven months), and that arithmetic would result in Wife's share being lower than it would be using points as agreed in the marital settlement agreement.[5]

As the hearing was drawing to a close, Wife's counsel reiterated his contention that the applicable regulations supported his expert's opinion and counsel's argument that Wife's correct share was one-half of the fraction produced by dividing 131 months by 240 months. He stated: "I am not basing this on common sense, I am not basing it on forms. I encourage Your Honor to look at sections 290211(a), 290607, 290607(a), (b) and (d), 29070 [sic; probably 290701] (a) and (c) and 10 U.S.C. Section 1408(a)(4)." The list did not include 290601.D, quoted above.

Wife's appellate issue about the circuit court striking her post-hearing submission arose because of some disputes during this hearing regarding exhibits. During the hearing, when Husband's counsel raised a question about certain documents that were offered as exhibits with respect to Wife's claim for back pay, the circuit court said that the proffered exhibits would be "marked as ID only[,]" and "I will give you both an opportunity . . . to

---

[5] One of the documents Husband submitted in support of his Counter-Motion for an amended division order was a letter dated June 29, 2018, which he had obtained from a "Retirements Specialist" for the Department of the Air Force, who stated: "As of 1 Apr 18, you have 20 years, 0 months and 9 days of service toward active duty retired pay. For the period of your marriage, 8 May 98 to 3 Apr 09, the date of divorce, you earned 5 years, 7 months and 16 days of service toward active duty retired pay."

16

get a calculation with supporting documentation. Submit them within . . . ten days." At the conclusion of the hearing, the court made plain that the additional post-hearing submissions of documentation were to be related only to "the back pay."

Husband and Wife both submitted post-hearing memoranda. Wife also filed a supplemental post-hearing memorandum that included an addendum to Wife's expert witness's analysis. Husband filed a motion to strike Wife's supplemental post-hearing memorandum as being beyond the scope of what was left open for supplementation, and the court granted Husband's motion to strike that supplemental post-hearing submission.

On March 31, 2023, the court convened a virtual hearing to announce its oral ruling on the record. The court summarized the orders that had been entered (by a different judge) on December 14, 2021, and March 3, 2022. The circuit court observed that neither party had appealed either the divorce judgment (entered April 9, 2009), the December 14, 2021 order (that had held Wife's share of Husband's military retired pay was 15.96%), or the March 3, 2022 Military Retired Pay Division Order (that had reiterated that Wife was awarded 15.96% of Husband's gross disposable military retired pay, and had stated, "This Order is a final judgment."). The court said that, because no timely appeal was taken after entry of the March 3, 2022 order, "the substantive provisions to that order stand."

But, in exercising the limited continuing jurisdiction that had been retained "for the purpose of acceptance by the military, to effectuate the terms of the parties' Judgment of Absolute Divorce[,]" the court observed that the June 2, 2022 letter from DFAS had suggested submitting a clarifying order with just the percentage, and Husband's counsel had "argue[d] that [the] military retired pay division order should be amended by the

removal of the language that relates to points and leaving only the percentage share." The court determined that such an amendment was "most appropriate because it is reflective of the parties' agreement and the relevant court orders."

On June 6, 2023, the circuit court entered an Amended Military Retired Pay Division Order that provided in pertinent part:

> [Wife] is awarded 15.96% of [Husband's] military gross disposable military retired pay, without any deductions for survivor benefits or other deductions. As of November 2022, [Husband's] current military retired pay was $6,844.00. As of the date of divorce, April 9, 2009, [Husband's] retired base pay (high 3) was $6,916.37, his rank was Lt. Col. (O-5), and [Husband] had 13.5 years of creditable service for retirement.

Wife noted this appeal on July 5, 2023.

At oral argument before this Court, Husband's counsel represented that DFAS had accepted the June 6, 2023 Amended Military Retired Pay Division Order for processing. In rebuttal, Wife's counsel denied having been advised that DFAS had accepted the order. The Court permitted the parties to submit supplemental documentation, including the marital settlement agreement, and the 2009 version of DoD 7000.14-R, which Wife included in her supplemental submission. Wife's supplemental submission asserted that she had never agreed that her share of Husband's retirement benefits is 15.96%, and further represented that, to the best of her knowledge, "DFAS has still not accepted the order."

Husband's supplemental submission filed on May 22, 2024, included a document that appears to be a letter from DFAS to Husband dated June 27, 2023, stating in pertinent part: "Based on the Amended Military Retired Pay Division Order [Wife] is awarded 15.96% of your disposable retired pay." The DFAS letter dated June 27, 2023, indicated

18

that, "[i]n accordance with the court order, direct payments to [Wife] should tentatively commence Aug 2023, with the first payment issued on the first of Sep 2023." Husband submitted an email dated July 5, 2023, indicating that his counsel had forwarded the DFAS letter of June 27, 2023, to Wife's counsel. Husband also included documentation showing certain payments Husband had made to Wife directly.

## MOTION TO PARTIALLY STRIKE NOTICE OF APPEAL[6]

Wife's notice of appeal, filed July 5, 2023, stated that she was appealing: "the [c]ircuit [c]ourt's final order of June 6, 2023, and all interlocutory orders, including those entered on April 3, 2023, and May 8, 2023[,] regarding: (1) [Wife's] Motion for Pension Back Pay and Monthly Payments; and (2) [Wife's] Motion for Entry of Substitute Military Retired Pay Division Order." Prior to briefing, Husband moved to partially strike Wife's notice of appeal, and Wife opposed the motion. This Court denied the motion without prejudice to Husband's renewal of the motion in his brief.

In his brief, Husband renews his motion to strike Wife's notice of appeal as to the orders entered by the circuit court prior to June 6, 2023. He argues that Wife's appeal of the orders entered on April 3, 2023, and May 8, 2023, should be stricken as untimely because those orders were final orders which Wife failed to appeal within thirty days following the entry of the orders, as required by Md. Rule 8-202(a). We decline to grant

---

[6] In his brief, Husband requests that this Court consider his "Motion to Dismiss the Appeal" that was previously filed in this case, but there is no record of a "Motion to Dismiss" this appeal. But this Court *did* previously deny without prejudice Husband's "Motion to Partially Strike the Appellant's Notice of Appeal Filed on July 5, 2023" and we shall address the merits of that motion.

the motion to partially strike the notice of appeal.

Generally, a litigant may appeal only from a "final judgment." *URS Corp. v. Fort Myer Constr. Corp.*, 452 Md. 48, 65 (2017); Md. Code, Courts and Judicial Proceedings Article § 12-301. A judgment is final "only when the trial court intends an 'unqualified, final disposition of the matter of the controversy' that completely adjudicates all claims against all parties in the suit, and only when the trial court has followed certain procedural steps when entering a judgment in the record." *URS Corp.*, 452 Md. at 65 (quoting *Waterkeeper All., Inc. v. Md. Dep't of Agric.*, 439 Md. 262, 278 (2014)); *accord Rohrbeck v. Rohrbeck*, 318 Md. 28, 43-44 (1989); *see also* Md. Rules 2-601–2-602.

In this case, the circuit court entered three written orders intended to memorialize and effectuate the oral rulings placed on the record on March 31, 2023: (1) on April 3, 2023, the signed hearing sheet from March 31, 2023 was entered as an order; (2) on May 8, 2023, the circuit court entered an order awarding Wife back pay of Husband's military benefits; and (3) on June 6, 2023, the circuit court entered the Amended Military Retired Pay Division Order.

The April 3, 2023 signed hearing sheet and May 8, 2023 back pay order were not final judgments because neither order adjudicated all claims of all parties. Because the circuit court announced at the hearing on March 31, 2023, that it intended to issue a written Amended Military Retired Pay Order, the circuit court's orders entered on April 3 and May 8 could not have been final judgments in the case until the Amended Military Retired Pay Order was entered in accordance with Md. Rule 2-601. *See Jenkins v. Jenkins*, 112 Md. App. 390, 402 (1996) (where a circuit court intends that a QDRO or Constituted Pension

20

Order be integral to the final judgment, the judgment is not appealable until the circuit court enters the QDRO); *Rohrbeck*, 318 Md. at 44 (holding that the circuit court's judgment was final only when the QDRO, "the last unresolved claim in the action[,]" was completed).

Wife's appeal, filed within thirty days after the June 6, 2023 entry of the Amended Military Retired Pay Order, was timely as to that order and the interlocutory orders that led to the entry of that order. Accordingly, we deny Husband's motion to partially strike Wife's notice of appeal.

**STANDARD OF REVIEW**

We review rulings made by a circuit court sitting without a jury "on both the law and the evidence." Md. Rule 8-131(c). We "will not set aside the judgment of the trial court on the evidence unless clearly erroneous," and we "will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.*

"'When a trial court decides legal questions or makes legal conclusions based on its factual findings, we review these determinations without deference to the trial court.'" *Plank v. Cherneski*, 469 Md. 548, 569 (2020) (quoting *MAS Assocs., LLC v. Korotki*, 465 Md. 457, 475 (2019)).

"Neither [Md. Code, Family Law Article] § 8-205 [n]or 10 U.S.C. § 1408 mandates any division of a military pension. **Whether to award retirement funds, and if so, how to allocate them, is within the discretion of the trial court**." *Fulgium*, 240 Md. App. at 288 (emphasis added) (citing *Long v. Long*, 129 Md. App. 554, 574 (2000)).

21

As this Court observed in a recent case addressing issues relative to the division of military retired pay between former spouses:

> In an action tried without a jury, this Court reviews the case on both the law and the evidence and may set aside the judgment of the trial court on the evidence where the finding is clearly erroneous. Maryland Rule 8-131(c). The trial court's interpretation and application of the law are reviewed as to whether the court's conclusions are "legally correct." *Schisler v. State*, 394 Md. 519, 535 (2006). A trial court "has broad discretion 'when determining the proper allocation of retirement benefits between the parties.'" *Bangs*, 59 Md. App. at 367 (citing *Deering v. Deering*, 292 Md. 115, 130 (1981)). The decision of the trial court is subject to reversal where its discretion has been abused. *North v. North*, 102 Md. App. 1, 13-14 (1994).
>
> Review of the modification of a final judgment is subject to the provisions of Maryland Rule 2-535. *Pelletier v. Burson*, 213 Md. App. 284, 290 (2013). In pertinent part, Maryland Rule 2-535(a) provides: "On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment[.]" *Id*. at 290. Further, Maryland Rule 2-535(b) provides that "[o]n motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."

*Smith*, 266 Md. App. at 116-17.

## DISCUSSION

### I. The Circuit Court's Adherence to the Orders it Entered on December 14, 2021, and March 3, 2022

Wife's first question takes issue with a statement the circuit court made while delivering an oral ruling at the March 31, 2023 hearing that eventually led to the entry of the Amended Military Retired Pay Order on June 6, 2023. In the oral ruling, the judge summarized the procedural history of the case up to that point and observed that the court had entered two previous judgments addressing the division of Husband's military retirement pay, one on December 14, 2021, and a second one on March 3, 2022. In each of

22

those previous orders, the circuit court had concluded that Wife was entitled to 15.96% of Husband's military retirement pay. In announcing the court's oral ruling on March 31, 2023, the court pointed out that the order entered on March 3, 2022, stated expressly that it was a "final judgment," but that the court would

> retain[] jurisdiction to enter additional orders and to amend this [March 3, 2022] Order for the purpose of acceptance by the military, to effectuate the terms of the parties' Judgment of Absolute Divorce and to settle any and all disputes between the parties relative to the benefits provided in this Order.

In the oral ruling on March 31, 2023, which led to the order that is the target of this appeal, the court focused on the limited scope of its retained jurisdiction and stated: "this [c]ourt does not have the authority to make the req[ue]sted substantive changes to the military retired pay division order. . . . As a result the substantive provisions to that order stand." Wife asserts that this statement of law was an error that warrants reversal and remand.

Husband responds that the circuit court properly found that it did not have authority to substantively modify the March 3, 2022 order because that order was a final judgment. He further argues that Wife's attempt to revise the March 3, 2022 order and relitigate the issues previously decided by the circuit court was barred by *res judicata*.

We disagree with Wife's claim of error for two reasons. First, the circuit court correctly anticipated this Court's ruling in *Smith*, 266 Md. App. at 121, wherein we held that, in the absence of fraud, mistake or irregularity, a court has limited authority under Maryland Rule 2-535 to exercise revisory power over a judgment more than thirty days after the judgment was entered. Consequently, the judge who was asked in this case to modify a judgment that had been entered more than thirty days before the motion seeking

23

revision was filed was appropriately circumspect about the court's authority to make the requested substantive modification.

Second, as we observed in *Smith*, even though the court's previously-entered judgment included a provision that retained jurisdiction to modify the order to make it acceptable under the Uniformed Former Spouses' Protection Act, that sort of provision does not authorize revision of a final judgment if the prior order does not *need* to be modified in order to comply with the "DFAS requirements for distribution of the spousal share[.]" *Id.* at 122-23.[7]

Here, the circuit court concluded that the order for payment of Wife's share by DFAS did not *require* the substantive modification sought by Wife, and consequently, the substantive provisions of the March 3, 2022 order should stand.

The court explained:

> This . . . [c]ourt only retained jurisdiction to effectuate the terms of the settlement agreement which awards [Wife] 15.96 percent of the pension. The provision of the order to settle any and all disputes between the parties relative to the benefits provided in this order does not reopen the door to re-litigate issues that have already been resolved by this [c]ourt.

---

[7] "[W]hile a trial court is not prohibited from amending orders to effectuate the intent of the parties, consistent with the terms of the settlement agreement, the court is not permitted to change the terms of an agreement reached by the parties." *Mills v. Mills*, 178 Md. App. 728, 739 (2008) (citing *Long v. State*, 371 Md. 72, 89 (2002) (holding that the court erred in entering a modified consent order which undermined and materially altered the terms of the parties' agreement); *Eller v. Bolton*, 168 Md. App. 96, 101 (2006) (holding that the circuit court retained jurisdiction to revise the QDRO regarding wife's award of husband's pension plan pursuant to the terms of the consent order). *Cf. Dziamko*, 193 Md. App. at 107 ("When the parties consent to certain terms and those terms are not fulfilled by subsequent court orders, an appeal may be heard.").

For the reasons set forth more fully in the next section of this opinion, we agree with that conclusion, and perceive no error of law in the circuit court's statement that it did not have authority to make the amendments requested by Wife.

**II. The Circuit Court Did Not Err in Awarding Wife 15.96% of Husband's Military Retirement Benefits**

Wife contends that the circuit court erred in awarding her just 15.96% of Husband's military retirement benefits and back pay. Wife asserts that federal law mandated that the circuit court calculate Wife's share of Husband's military retirement benefits by using a formula based on "months" rather than "points." Had the circuit court calculated Wife's share of Husband's retirement pay on the basis of months, she contends, she would have been awarded 27.3% of Husband's gross retired military pay and back pay.

Husband counters that the circuit court's award of 15.96% of his gross disposable military retired pay was consistent with the parties' marital settlement agreement in which they agreed to calculate the marital property portion of his military retirement pay using the "points" system that is applicable to reserve military service, and that was correct despite the unanticipated development that the gross dollar amount of his total retirement pay was based upon the total months of his active duty service. Husband further asserts that the Amended Military Retirement Pay Division Order does not violate federal law, but rather, satisfies Department of Defense Finance Management Regulations and DFAS's suggestion that the parties could submit an order setting forth Wife's award in the form of a percentage of his total gross retirement pay to avoid the apparent confusion that would be caused by the use of a formula in the pay order.

Military retirement pay is a federal benefit that, similar to a pension, provides a monthly annuity for life following a service member's retirement. *Fulgium*, 240 Md. App. at 278-79; *Dziamko*, 193 Md. App. at 116. The requirements and structure of the reserve program are set out in 10 U.S.C. §§ 12731 to 12741; and the requirements for active-duty or "regular" retirement are set forth in 10 U.S.C. §§ 1401 to 1414. One of the complicating factors in this case is that Husband's military service during his marriage to Wife was in the reserves for all but eleven months of the marriage, and, if he had retired on or soon after the date of their divorce, his retirement pay would have been determined under the reserve program. But, because he returned to active duty after the divorce and was serving on active duty as of the date of retirement, his retirement pay was determined under the active-duty program.

Nevertheless, the issue in this case is not a dispute regarding the total amount of Husband's entitlement to retirement pay. Instead, the dispute in this case is about how to calculate the fraction of Husband's total retirement pay the parties agreed would be marital property, one-half of which would be paid to Wife. Husband's position is that that fraction is spelled out in Paragraph 27 of their marital settlement agreement that was incorporated into the judgment of divorce. Wife's position is that federal law precludes the use of the computation she agreed to at the time of the divorce. Like the circuit court, we are not persuaded that federal law prohibits enforcement of the computation set forth in the parties' marital settlement agreement.

The Uniformed Services Former Spouse Protection Act ("USFSPA"), 10 U.S.C. § 1408, was passed by Congress in 1982, and "authorizes state courts to treat 'disposable

26

retired or retainer pay'" as marital property. *Mansell*, 490 U.S. at 584 (quoting 10 U.S.C.

§ 1408(c)(1)). Describing the legislative history of the USFSPA in *Smith*, this Court stated:

> The twofold purpose of the USFSPA is to authorize states to distribute military retired pay to spouses and former spouses and to provide a mechanism for the DoD to enforce these payment orders. Under the regulations, disposable retired pay is a federal entitlement that is defined under 10 U.S.C. § 1408(a)(4) as "the total monthly retired pay to which a member is entitled less [certain] amounts."
>
> The legislative history of the USFSPA includes a description of the legislative intent of the act:
>
>> The provision is intended to remove the federal preemption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible. **Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution**.
>
> S. Rep. No. 97-502, at 1611, July 22, 1982; *Fulgium v. Fulgium*, 240 Md. App. 269, 279-80 (2019).

*Smith*, 266 Md. App. at 123-24 (emphasis added).[8]

While the USFSPA grants states the authority to divide disposable retired pay as a

marital asset, it does limit the fractional share that can be paid to a former spouse by DFAS

---

[8] We also noted in *Smith*, 266 Md. App. at 124 n.9, that the National Defense Authorization Act ("NDAA") for the Fiscal Year 2017 adopted new rules applicable to judgments of divorce entered on or after December 23, 2016. The new rules have the effect of freezing the marital property calculation as of the date of divorce. "The intent of the amendment was to prevent overcompensation to former spouses especially for achievements earned by their former spouse following separation." *Id.* (citing *Fulgium*, 240 Md. App. at 281). Because the date of the judgment of divorce in this case predated December 23, 2016, the NDAA 2017 rules do not apply.

pursuant to a court order to 50% of the member's disposable retired pay. 10 U.S.C. § 1408(e)(1). But that limit has no application to the dispute in this case.

The Department of Defense Financial Management Regulations 7000.14-R, Chapter 29 ("DoD 7000.14-R"), implement the USFSPA. As noted above, DoD 7000.14-R sets forth the required contents of a court order awarding military retirement pay as follows:

290601. Contents of Court Order[9]

\* \* \*

D. **If the order contains a retired pay award, that award must be expressed as a fixed dollar amount <u>or as a percentage of disposable retired pay</u>.**

\* \* \*

F. If the former spouse and the member were divorced before the member became entitled to receive military retired pay, the retired pay award **<u>may be expressed</u> as a formula or hypothetical retired pay award in accordance with paragraphs 290607 and 290608.** Since the computation of formula and hypothetical retired pay awards result in a percentage, they are considered a type of percentage award, and would automatically receive a proportionate share of the member's retired pay COLAs.

\* \* \*

290607. Acceptable Formula Awards

---

[9] Although DoD 7000.14-R has undergone formatting and organizational changes since 2009, including revisions from paragraph numbering (i.e., ¶ 290601) to a decimal format (i.e., § 6.1), the substantive requirements governing military retired pay division orders at issue in this case, specifically the requirement that the order be regular on its face and express the award as a fixed dollar amount or percentage, were materially unchanged from the 2009 version to the 2023 version of DoD 7000.14-R 6.1 *et seq.*

28

A. **If the former spouse's award is expressed in terms of a formula**, all the variables needed to calculate the formula must be included in the court order, with the exception of a member's total number of months of creditable service or total number of Reserve retirement points, which the designated agent will provide in accordance with subparagraphs 290607.B and C.

(Emphasis added.)

The language in DoD 7000.14-R 290601 tracks the definition of the required contents of a court order for division of retirement pay set forth in 10 U.S.C. § 1408 (a)(2)(C), which provides:

(2) The term "court order" means a final decree of divorce . . . or approved property settlement incident to such a decree (including a final decree . . . incident to such previously issued decree), . . . which—

\* \* \*

(C) in the case of a division of property, specifically provides for the payment of an amount, **expressed in dollars or as a percentage of disposable retired pay**, from the disposable retired pay of a member to the spouse or former spouse of that member.

10 U.S.C. § 1408 (a)(2)(C) (emphasis added).

Wife did not address DoD 7000.14-R 290601 in her brief, but she contends that the calculation of her share of Husband's retirement pay *must be* based upon the definition of a "formula award" set forth in DoD 7000.14-R 290211, which provides:

290211. Formula Award[10]

A formula award computes a former spouse's property interest in a military member's retired pay based on the relationship of the length of the parties' marriage during the member's creditable service (numerator) to the member's total service that is creditable toward retirement (denominator). A

---

[10] It should not be overlooked that all of the regulations that begin with the digits 2902 fall under the subsection of DoD 7000.14-R general heading "2902 DEFINITIONS[.]"

29

formula award is stated as a marital fraction in which the numerator and denominator are multiplied by a given percentage.

A. For members qualifying for an active duty (i.e., regular service) retirement, the numerator is the number of months the parties were married while the member was performing creditable military service and the denominator is the number of months of the member's total creditable military service. The elements must be expressed in terms of whole months. The former spouse's award is usually calculated by multiplying the marital fraction by one-half or 50 percent, or any other given percentage amount. See paragraph 290607 for acceptable active duty formula award language.

B. For members qualifying for a Reserve (i.e., non-regular service) retirement, the numerator is the number of Reserve retirement points earned during the parties' marriage, and the denominator is the member's total number of Reserve retirement points. The elements must be expressed in terms of Reserve retirement points. The former spouse's award is usually calculated by multiplying the marital fraction by one-half or 50 percent, or any other given percentage amount. See subparagraph 290607.B for acceptable Reserve formula award language.

Although DoD 7000.14-R 290211 provides details about what information the parties and court order must provide DFAS *if* the former spouse's marital share is being expressed as a formula in the state court's order for payment, DoD 7000.14-R 290601.D (quoted above) indicates that the pay award *may be* "expressed . . . as a percentage of disposable retired pay." Our reading of the regulations is that the circuit court had the option, but was not required, to express Wife's award as a formula. The circuit court's decision, therefore, to express Wife's award of a share of Husband's retired pay as a percentage did not violate DoD 7000.14-R 290211 or 290601.

Although the DoD regulations *permit* an award to be expressed as a percentage, the regulations do not specify whether, in deciding what that percentage will be, the state court must use months or points or some combination to calculate how much a spouse's marital

30

share of a service member's retired pay should be where, as here, the service member earned retired military pay through a combination of active and reserve duty. In *Smith*, we addressed the preference of many courts for using points rather than months in such situations:

> Many members of the United States military serve on both active duty and as a reservist during their career. When there is a transition of service, it is critical to account for the change in how each form of the member's service is credited toward their retirement. One legal commentator has observed that:
>
>> Use of a simple years of service computation rather than recognition of the point system will, in some situations lead to inequitable conclusions. The greatest potential for distortion of the marital share of the benefit occurs in situations where the member of the military retirement system switches from regular component to reserve component service.
>
> *In re Marriage of Beckman*, 800 P.2d 1376, 1379-80 (Colo. App. 1990) (citing W. Troyan, "Procedures for Evaluating Retirement Entitlements Under Non-ERISA, Retirement Systems for Marriage Dissolution Actions," 3 J.P. McCahey, ed., *Valuation & Distribution of Marital Property* § 46.34(1) (1990)). Therefore, **when the military retirement benefit is a result of the combination of active and reserve component service, points are the proper method for calculating the fraction**. W. Troyan, "Procedures for Evaluating Retirement Entitlements Under Non-ERISA, Retirement Systems for Marriage Dissolution Actions," 3 J.P. McCahey, ed., *Valuation & Distribution of Marital Property* § 46.34(2)(d) (1990).

266 Md. App. at 125-26 (emphasis added).

We pointed out in *Smith* that, for purposes of analyzing military retirement pay, the accrual of points and the accrual of months of active-duty service can present a situation of viewing apples and oranges because "a member of the military in active service earns one point for each day of active service, while a reservist earns a point for every day certain activities are conducted." *Id.* at 124-25. The two measurements of service are not

31

necessarily comparable as monthly units. And it appears to be easier to convert months of active duty service to points than it is to convert points earned for reserve duty to months. In that regard, we observed in *Smith*, that the units of measurement in the fraction's numerator must be the same as the units of measurement in the fraction's denominator because "'[n]othing else would yield a meaningful fraction or percentage.'" *Id.* at 129 (quoting *Heger v. Heger*, 184 Md. App. 83, 109 (2009)).

In *Woodson v. Saldana*, 165 Md. App. 480 (2005), this Court noted that the system of accruing points for reservists reflects a different method of valuing a reservist's service, instead of merely counting the amount of time served, by considering the nature of a reservist's activities. *Id.* at 490-91; *see* 10 U.S.C. § 12731 *et seq*. For example, reservists earn points "not only for days of service, but also for performing certain drills, completing certain education courses, and maintaining membership in certain military units." *Woodson*, 165 Md. App. at 485; *see* 10 U.S.C. § 12732 *et seq*. "Reservists must accrue at least 50 'retirement points' in a calendar year to have that year qualify toward retirement." *Woodson*, 165 Md. App. at 485; *see* 10 U.S.C. § 12732(a)(2). We determined that, for determining the marital portion of the military retirement benefit in that case, because the "reservist's retirement pay is not strictly a function of the length of military service, the appropriate formula is retirement points earned during the marriage divided by the total retirement points earned." *Woodson*, 165 Md. App. at 491; *accord Smith*, 266 Md. App. at 126.

Courts in other jurisdictions that have considered this issue have concluded that retirement benefits earned through a combination of active and reserve duty should be

calculated based on the accrual of retirement points rather than the length of service. *See, e.g.*, *Faulkner v. Goldfuss*, 46 P.3d 993, 1003 (Alaska 2002) (where wife's National Guard service consisted of both active and reserve duty, it was error for the trial court to determine husband's marital share of her retirement based on months rather than the number of points earned); *In re Marriage of Poppe*, 97 Cal. App. 3d 1, 8 (1979) (explaining that "the basis upon which the apportionment was made, years of service during the marriage before separation compared to 'qualifying' years in service, bears no substantial rational relationship to the amount of the pension" in the case of a spouse who served in both active duty and reserve capacities); *In re Marriage of Beckman*, 800 P.2d 1376, 1379 (Colo. App. 1990) (stating that the calculation of benefits based strictly on years of service rather than points for a member who accumulates both active and reserve service "will, in some situations, lead to inequitable conclusions" (cleaned up)); *In re Marriage of Hill*, 986 N.W.2d 884, 889 (Iowa Ct. App. 2022) ("[W]hen a military member's retirement pay is not strictly a function of the length of military service, the appropriate formula . . . is retirement points earned during the marriage divided by the total retirement points earned."); *Bojarski v. Bojarski*, 41 A.3d 544, 549 (Me. 2012) (holding that, when a spouse earns military retirement benefits "through a combination of active and reserve duty, courts must calculate the marital share of retirement benefits based on the accrual of retirement points"); *Hasselback v. Hasselback*, 2007 Ohio 762, 2007 WL 549461, at *4 (Ohio Ct. App. 2007) (holding that the "points" method was the appropriate method for valuing husband's military retirement benefits earned through a combination of reserve and active duty); *Contreras v. Contreras*, 974 S.W.2d 155, 158-59 (Tex. App. 1998) (holding that it

was error to ignore the point system and treat husband's reserve duty years like active duty years in calculating wife's portion of his retirement pay).

We agree with the state courts cited above that, when a member's retirement pay is earned through a combination of active and reserve duty, it is appropriate for a court to utilize points rather than months of service to calculate a spouse's share of the marital property portion of a service member's military retirement benefits.

At the time Husband and Wife divorced, the parties agreed to use Husband's retirement points to calculate the portion of Husband's retired military pay Wife would receive. The Amended Military Retired Pay Division Order enforced the terms of the marital settlement agreement by awarding Wife a percentage of Husband's retired military pay based on the parties' agreement to calculate the marital portion of his retirement pay based on points. The Amended Military Retired Pay Division Order entered by the circuit court also complied with the DoD regulation that stated the award could be expressed "as a percentage of disposable retired pay," and also complied with the June 2, 2022 DFAS letter that suggested including a percentage of Husband's retirement pay in a clarifying court order. We conclude that it was neither legal error nor an abuse of discretion for the circuit court to amend the Military Retired Pay Division Order to confirm that Wife was to receive 15.96% of Husband's gross disposable military retired pay

### III. The Circuit Court's Order Granting Husband's Motion to Strike Wife's Post-Hearing Supplemental Memorandum

At the conclusion of the December 19, 2022 hearing, the circuit court permitted the parties to submit additional documentation following the hearing. Husband and Wife

submitted post-hearing memoranda. Wife then submitted a supplemental memorandum which included a *revised* expert report that utilized data from Husband's post-hearing memorandum. Husband filed a motion to strike Wife's supplemental memorandum, which the court granted.

Wife argues that the circuit court "arbitrarily and capriciously" struck her supplemental post-hearing memorandum, but she fails to provide any explanation in her brief as to how the court's consideration of the supplemental memorandum would have influenced the court's decision in this case. As we noted above, the circuit court told counsel at the conclusion of the December 19, 2022 hearing that the parties could file post-hearing submissions "only for the back pay" issue. Wife's brief does not explain how her submittal complied with that limited subject matter, and more importantly, how consideration of the documents that were struck by the court could have altered the court's ruling on the issues that were raised, or could have been raised, in this appeal. Consequently, we perceive no error.

**APPELLEE'S MOTION TO PARTIALLY STRIKE NOTICE OF APPEAL IS DENIED.**

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**